No. 88-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN THE MATTER OF THE SUSPENSION OF
THE DRIVER'S LICENSE OF BYRNE
KENNEDY GEBHARDT,

        Petitioner and Respondent,

   -vs-

STATE OF MONTANA,

        Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Peter Funk, Asst. Attorney General, Helena, Montana
Floyd A. Brower, County Attorney, Roundup, Montana

    For Respondent:

        John L. Pratt, Ask & Pratt, Roundup, Montana

_____

Submitted on Briefs:  March 23, 1989

Decided:  July 6, 1989

Filed:

_____
               Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The State of Montana appeals from an order of the District Court of the Fourteenth Judicial District, Musselshell County, which held that respondent Byrne Kennedy Gebhardt was justified in refusing to submit to a chemical test of his breath for the purpose of determining the alcoholic content of his blood because the officer who arrested him did not have reasonable grounds to believe he was in actual physical control of a motor vehicle while under the influence of alcohol. We reverse and remand.

The sole issue raised on appeal is whether the District Court erred in ruling that the arresting officer did not have reasonable grounds to believe that Gebhardt was in actual physical control of a vehicle upon the ways of the state open to the public while under the influence of alcohol.

On January 29, 1988, at approximately 1:30 a.m., Montana Highway Patrolmen George Kostelecky and Jeffree McLaughlin responded to a call concerning a vehicle stuck in the ditch near the intersection of Shilo and Hesper Roads, a residential area on the outskirts of Billings. Upon arrival, the patrolmen found a Chevrolet pickup located approximately ten feet off the traveled portion of the road. The vehicle was mired in mud up to its axles with its engine running. Its headlights were off, but its parking lights were on.

The patrolmen observed tire chains next to the rear wheels of the pickup and a bumper jack behind the vehicle. Tire tracks indicated that the pickup had become stuck when the driver attempted to negotiate a U-turn on the nearby road.

The patrolmen discovered Gebhardt asleep, lying across the front seat of the pickup with his feet and legs beneath the steering wheel and his head near the passenger door. The officers had to shake and yell at Gebhardt to rouse him. When awakened, he was belligerent and uncooperative. The officers smelled an odor of alcohol in the cab of the pickup and on Gebhardt's breath.

Patrolman Kostelecky placed Gebhardt under arrest for being in actual physical control of a vehicle while under the influence of alcohol, a violation of § 61-8-401, MCA. The patrolmen did not conduct any sobriety tests at the scene, but they conducted a series of physical tests when they arrived at the Yellowstone County Courthouse. Gebhardt failed two of the three tests administered.

Because Gebhardt refused to take a chemical test of his breath to determine the alcholic content of his blood, his driver's license was seized pursuant to the mandates of the implied consent law, § 61-8-402, MCA. He was issued a 72-hour driving permit in place of the license.

Before the Department of Justice formally acted to suspend his license, Gebhardt filed a petition seeking judicial review of the license seizure and anticipated suspension. The District Court issued an order staying the suspension of Gebhardt's driver's license pending a hearing.

On February 22, 1988, a hearing was held on the petition for judicial review. Following the hearing, the District Court ordered that the arresting officer did not have reasonable grounds to believe that Gebhardt was in actual physical control of a vehicle upon the ways of this state open to the public while under the influence of alcohol. Therefore, Gebhardt's subsequent refusal to take a chemical breath test was justified and he was entitled to a driver's license. The State of Montana appeals from this order.

- 3 -

Under Montana law, an individual who is arrested for operating a motor vehicle while under the influence of alcohol is deemed to have given his consent to a chemical test for the purpose of determing the alcoholic content of his blood. Refusal to submit to a chemical test results in immediate seizure of the individual's driver's license and formal suspension of the driving privilege by the Department of Justice. This law, commonly known as the implied consent statute, is set out at § 61-8-402, MCA, which provides in pertinent part:

(1) Any person who operates a vehicle upon ways of this state open to the public shall be deemed to have given consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving or in actual physical control of a vehicle while under the influence of alcohol. The test shall be administered at the direction of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol. The arresting officer may designate which one of the aforesaid tests shall be administered.

. . .

(3) If a resident driver under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the arresting officer as provided in subsection (1) of this section, none shall be given, but the officer shall, on behalf of the department, immediately seize his driver's license. The peace officer shall forward the license to the department, along with a sworn report that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol and that the person had refused to submit to the test upon the request of the peace officer. Upon receipt of the report, the

department shall suspend the license for the period provided in subsection (5).

(4) Upon seizure of a resident driver's license, the peace officer shall issue, on behalf of the department, a temporary driving permit, which is valid for 72 hours after the time of issuance.

(5) The following suspension and revocation periods are applicable upon refusal to submit to a chemical test:

(a) upon a first refusal, a suspension of 90 days with no provision for a restricted probationary license;

(b) upon a second or subsequent refusal within 5 years of a previous refusal, as determined from the records of the department, a revocation of 1 year with no provision for a restricted probationary license.

. . .

(7) All such suspensions are subject to review as hereinafter provided.

Judicial review of the suspension of a driver's license for failure to take a chemical test is governed by § 61-8-403, MCA, which provides:

> The department shall immediately notify any person whose license or privilege to drive has been suspended or revoked, as hereinbefore authorized, in writing and such person shall have the right to file a petition within 30 days thereafter for a hearing in the matter in the district court in the county wherein such person resides or in the district court in the county in which this arrest was made. Such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon 10 days' written notice to the county attorney of the county wherein the appeal is filed and such county attorney shall represent the state, and thereupon the court shall take testimony and examine into facts of the case, except that the issues shall be limited to whether a peace officer had reasonable grounds to believe

> the person had been driving or was in actual
> physical control of a vehicle upon ways of this
> state open to the public, while under the influence
> of alcohol, whether the person was placed under
> arrest, and whether such person refused to submit
> to the test. The court shall thereupon determine
> whether the petitioner is entitled to a license or
> is subject to suspension as heretofore provided.
> (Emphasis added.)

A hearing held under this statute is a civil proceeding, separate and distinct from a criminal trial on the charge of operating a motor vehicle while under the influence of alcohol. In re Blake (1986), 220 Mont. 27, 31, 712 P.2d 1338, 1341. During the course of the criminal proceedings resulting from the citation for driving under the influence, the judge or jury determines the ultimate issue, that is, whether, beyond a reasonable doubt, the defendant had been driving or was in actual physical control of a vehicle on the ways of this state open to the public while under the influence of alcohol. However, during the civil proceedings reviewing the propriety of the suspension of the petitioner's driver's license for failing to submit to a chemical test, the judge determines only:

> (1) whether the arresting officer had reasonable grounds to believe the following:
>
> (a) that the petitioner had been driving or was in actual physical control of a vehicle;
>
> (b) that the vehicle was on a way of this state open to the public; and
>
> (c) that the petitioner was under the influence of alcohol;
>
> (2) whether the individual was placed under arrest; and
>
> (3) whether the individual refused to submit to a chemical test.

Neither party in this case has ever contended that Gebhardt was not arrested nor that he refused to submit to a chemical test. The only issue presented to the District Court for review was whether the arresting officer had reasonable grounds to believe that Gebhardt was in actual physical control of a vehicle on a public way while under the influence of alcohol.

In ruling from the bench, the District Court expressed doubt as to whether Gebhardt's vehicle was on a "way of this state open to the public." Section 61-8-101(1), MCA, defines this phrase in the following manner:

> As used in this chapter, "ways of this state open to the public" means any highway, road, alley, lane, parking area, or other public or private place adapted and fitted for public travel that is in common use by the public.

The term highway is defined by § 61-1-201, MCA, as follows:

> "Highway" means the entire width between the boundary lines of every publicly maintained way when any part there of is open to the use of the public for purposes of vehicular travel, <u>except that for the purpose of chapter 8</u> [governing traffic regulation] <u>the term also includes ways which have been or shall be dedicated to public use.</u> (Emphasis added.)

These statutes clearly provide that, with regard to matters involving a motorist driving under the influence of alcohol, a "way of this state open to the public" is not limited to the traveled portion of the road but extends to the accompanying right-of-ways that are dedicated to public use. Indeed, in State v. Taylor (1983), 203 Mont. 284, 661 P.2d 33, a case in which we upheld the conviction of an individual who was discovered asleep behind the steering wheel of a vehicle stuck in a borrow pit, we concluded that a borrow pit that had been dedicated to public use constituted a "highway" within the meaning of § 61-1-201, MCA.

The question presented to the District Court was not whether the vehicle was, beyond a reasonable doubt, on a public highway, but whether the arresting officer had reasonable grounds to believe that the pickup was on a public highway. Considering the statutory language and the precedent set by Taylor, the arresting officer had reasonable grounds to believe that Gebhardt's pickup, located approximately ten feet from the traveled portion of the roadway, was on a way of the state open to the public.

The District Court also ruled from the bench that, because the vehicle was mired in the mud and could not be moved, Gebhardt did not have actual physical control of the pickup. However, in Taylor, where the defendant's vehicle was stuck in a borrow pit and immobile, we stated that movement of a vehicle is not required for "actual physical control." A motorist does not relinquish control over a vehicle simply because it is incapable of moving. Taylor, 203 Mont. at 287, 661 P.2d at 34.

Nor does a motorist relinquish actual physical control over a vehicle because he is lying across the front seat, asleep. In Taylor, the defendant was asleep and slumped over the steering wheel of his vehicle with its engine running and its lights on. We held that he was in actual physical control of the vehicle. Similarly, in State v. Ryan (Mont. 1987), 744 P.2d 1242, 44 St.Rep. 1735, we held that a motorist who was lying across the front seat of a vehicle with his feet near the gas and brake pedals while the engine was running and the lights were on was in actual physical control of the vehicle.

In the present case, Gebhardt was found alone in the pickup. He was asleep, lying across the front seat with his legs beneath the steering wheel. The engine was running and the parking lights were on. This set of facts gave Officer

Kostelecky reasonable grounds to believe that Gebhardt was in actual physical control of the vehicle.

The District Court also concluded that the arresting officer did not have reasonable grounds to believe that Gebhardt was under the influence of alcohol. It appears that the court based this conclusion on the fact that Officer Kostelecky failed to administer any sobriety tests at the scene. We agree with the District Court to the extent that a motorist's failure to pass sobriety tests given at the scene strenthens the State's case. However, the failure to administer field sobriety tests does not, by itself, constitute lack of reasonable grounds to believe that a motorist may be under the influence of alcohol. Rather, reasonable grounds exist if the facts and circumstances within the personal knowledge of the arresting officer would be sufficient to warrant a reasonable person to believe that the motorist is under the influence of alcohol. See State v. Lee (Mont. 1988), 754 P.2d 512, 515, 45 St.Rep. 903, 906-07.

In this case, Officer Kostelecky observed Gebhardt asleep in a vehicle while the motor was running. Gebhardt was difficult to rouse and, once awakened, was belligerent. Gebhardt's breath and the cab of the pickup smelled of alcohol. This combination of facts constitutes reasonable grounds to believe that Gebhardt was under the influence of alcohol.

We reverse the District Court and remand for entry of an order consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

- 9 -

_P. C. McDonough_

_John Conway Harrison_

_John C. Sheehy_
_____
Justices

# CORRECTION

Date 7/11/89

EDITORIAL DEPARTMENT
West Publishing Co., P.O. Box 3526, St. Paul, MN 55165

Please make the following correction in the opinion in the case of:

Title: 88-210, Gebhardt v. State

Vol. _____ Rptr. _____ Page _____

In first/second column, line _____ from top/bottom.

_last page — first full paragraph line 8_

should read . . . Strengthens the State's case.

Signed _Pam Chapman Otto_

The expense of making changes is such that we cannot undertake it for items of merely typographical style.

West Publishing Co.

N182c