FILED

December 2 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0317

DA 13-0317

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 315

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KEVIN ALLEN SOMMERS,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Ninth Judicial District,
                    In and For the County of Glacier, Cause No. DC-11-39
                    Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender; Chad R. Vanisko, Assistant
                Appellate Defender; Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General; Pamela P. Collins, Assistant
                Attorney General; Helena, Montana

                Carolyn Berkram, Glacier County Attorney; Cut Bank, Montana

                            Submitted on Briefs:  August 20, 2014
                                  Decided:  December 2, 2014

Filed:

                                      Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Kevin Allen Sommers appeals his conviction from the Ninth Judicial District Court, Glacier County, finding him guilty of driving under the influence, fourth or subsequent offense. A jury found Sommers guilty of driving or in actual physical control of a motor vehicle while under the influence of alcohol.

¶2    The issues on appeal are:

   *1. Did the District Court properly instruct the jury on the meaning of "actual physical control"?*

   *2. Did the District Court wrongly deny Sommers' motion for acquittal?*

   *3. Did the District Court properly determine Sommers' ability to pay costs?*

¶3    We reverse and remand for further proceedings consistent with this opinion. Because we are reversing Sommers' conviction, we do not reach the issue of his ability to pay costs.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    The following evidence was presented at trial. Around midnight, on November 29, 2011, Cut Bank Police Officer Raymond Stubbs received a call requesting a welfare check on a man apparently unconscious in a truck parked at the Town Pump. When Officer Stubbs arrived, he saw and heard that the truck was running. When he looked inside the truck, Officer Stubbs saw a man—later identified as Sommers—in the driver's seat, slumped over the steering wheel. Officer Stubbs knocked on the driver's side window. Upon receiving no response, Officer Stubbs opened the door and roused Sommers. Officer Stubbs asked Sommers to turn the truck off, which Sommers did. According to Officer Stubbs, Sommers smelled of alcohol, slurred his words, and had red, watery eyes.

2

¶5 Officer Stubbs asked Sommers to step out of the truck and perform field sobriety tests. Sommers had trouble with his balance when he walked, and did poorly on the one sobriety test he performed before refusing to perform further tests. Throughout the encounter, Sommers argued with Officer Stubbs, stating several times that he wasn't driving, and that he had called a ride and was only waiting in his truck for his ride to arrive.

¶6 Officer Stubbs arrested Sommers on suspicion of driving under the influence of alcohol (DUI). During the booking process, Sommers refused to perform a breath test. Officer Stubbs obtained a search warrant to test Sommers' blood. The results of Sommers' blood test indicated an alcohol concentration of .25. Sommers' criminal record showed three prior convictions for DUI. Sommers was accordingly charged with driving or being in actual physical control of a motor vehicle while under the influence of alcohol, fourth or subsequent offense.

¶7 At trial, Sommers testified that he drove to the Town Pump to purchase beer. As he was pulling into the Town Pump parking lot, he heard a loud clunk. Sommers assumed the clunk came from his truck's universal joint because it had previously been making clunking sounds. He was able to coast his truck into a parking space, but the truck would not move on its own power from the parking space. He did not think he could move the truck by pushing it because the truck weighed too much.

¶8 Sommers decided to go to the bar next to the Town Pump. While at the bar Sommers drank "a lot" and called his girlfriend in Missoula, Tanya Colby, to ask for a ride back to Missoula. Colby told Sommers she would drive up to Cut Bank with her brother to get him.

3

¶9     The bar closed early because there were few customers, so Sommers went into the Town Pump and called Colby again to find out when she would arrive. After finishing his call, Sommers went outside, got in his truck, and started it to keep warm. He fell asleep shortly afterward and awoke when Officer Stubbs opened the door of his truck. Sommers admits he was "very drunk" when Officer Stubbs arrived, and he admits he never mentioned to Officer Stubbs that his truck was broken down. At some point after his arrest and release, Sommers had his truck towed to Missoula where he discovered the coupler between the universal joint and the drive shaft had broken, causing one end of the drive shaft to hang down to the ground.

¶10    Colby and her brother both testified at trial. Their respective testimonies were inconsistent in certain details, but both testified that they arrived at the Town Pump after Sommers' arrest and saw a piece of the truck hanging down from the undercarriage, touching the ground. Both testified they saw marks where the piece had dragged along the ground. They believed the loose piece was either the universal joint or the drive shaft. Colby's brother testified that he was able to start the truck, but when he put it in drive it would not move.

¶11    After the defense rested its case, Sommers moved for a judgment of acquittal on the basis that the State did not present sufficient evidence to prove he was in actual physical control of a vehicle because the vehicle was both inoperable and immovable. The District Court denied the motion and proceeded to jury instructions.

¶12    Relevant to the issue on appeal, the District Court instructed the jury on the definition of "actual physical control" as follows:

4

A person exerts actual physical control over a motor vehicle if the person exercises present bodily restraint, directing influence, domination or regulation over a motor vehicle. It does not matter that the vehicle is incapable of moving.

¶13 The jury found Sommers guilty of driving or being in actual physical control of a motor vehicle while under the influence of alcohol, fourth offense, a felony in violation of § 61-8-401, MCA. Sommers appeals.

## STANDARD OF REVIEW

¶14 We review a district court's jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. The district court maintains broad discretion when instructing the jury. The instructions must prejudicially affect the defendant's substantial rights to constitute reversible error. *State v. Hudson*, 2005 MT 142, ¶ 10, 327 Mont. 286, 114 P.3d 210 (internal citations omitted).

¶15 We review de novo whether sufficient evidence supports a conviction. We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *State v. Redlich*, 2014 MT 55, ¶ 18, 374 Mont. 135, 321 P.3d 82.

## DISCUSSION

¶16 *1. Did the District Court properly instruct the jury on the meaning of "actual physical control"?*

¶17 The DUI statute under which Sommers was convicted states, "It is unlawful and punishable . . . for a person who is under the influence of alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public." Section 61-8-401(1)(a), MCA. The State presented no evidence at trial that Sommers drove while

5

under the influence. Instead, the State presented evidence intended to prove Sommers was in "actual physical control" of his truck when Officer Stubbs found him passed out at the wheel.

¶18   Sommers' defense at trial was that his vehicle was disabled in such a way that he could not move it, making "actual physical control" impossible. Sommers argues on appeal that a person cannot be in actual physical control of a disabled vehicle for purposes of the DUI statute, and that the District Court's instruction, "It does not matter that the vehicle is incapable of moving," misstated the law, and thereby deprived him of a valid defense.

¶19   Although the District Court's instruction is a direct quote from a prior opinion of this Court, that statement did not fully and fairly instruct the jury on the applicable law, and we take this opportunity to clarify its meaning. This case calls on us, once again, to determine the meaning of "actual physical control" for purposes of the DUI statutes.[1] Specifically, we must determine whether a person can have "actual physical control" over a disabled vehicle.[2]

**Can a person have "actual physical control" of a disabled vehicle?**

¶20   The phrase, "actual physical control" was first included in Montana's DUI statute in 1955. *See* 1955 Mont. Laws ch. 263 (34th Legislative Assembly, Senate Bill 59), enacted as

---

[1] The phrase "actual physical control" is used in both the DUI statute, § 61-8-401, MCA, and the DUI per se statute, § 61-8-406, MCA, as well as the license revocation statutes, §§ 61-8-402 to 403, MCA.

[2] "Disabled" is used throughout this opinion to mean a vehicle that is incapable of movement.

6

§ 32-2142(1)(a), RCM (1947). The statute was adopted from the 1954 version of the Uniform Vehicle Code (UVC). The National Committee on Uniform Traffic Laws and Ordinances first included the language "in actual physical control" in the 1934 version of the UVC, and that language has continued through the most recent version of the UVC published in 2000. There are no committee notes or commentaries on the purpose of the language "actual physical control" in any version of the UVC, nor is there any record of any discussions of the phrase by the Montana legislature. However, more than 30 states have adopted the Uniform Vehicle Code, or a variation of its DUI statute that includes the phrase "actual physical control." Every court to consider the purpose of that phrase has determined that prohibiting actual physical control of a vehicle while under the influence is meant to prevent DUI at its inception. *See* 92 A.L.R. 6th 295, § 7 (2014) (collecting cases). Courts have variously described the prohibition on actual physical control as a "prophylactic measure that is intended to discourage intoxicated persons from entering motor vehicles except as passengers." *State v. Adams*, 127 P.3d 208, 210—11 (Idaho Ct. App. 2005). It is meant to "enable the drunken driver to be apprehended before he strikes . . . ." *State v. Webb*, 274 P.2d 338, 340 (Ariz. 1954), and is "based on the policy of deterring intoxicated people from assuming physical control of a vehicle, even if they never actually drive." *Larson v. State*, 2010 Alas. App. LEXIS 106, 5 (Alaska Ct. App. 2010).

¶21    Given that the DUI statute's purpose is to prevent impaired driving, a suitable definition of "actual physical control" must necessarily revolve around control of a vehicle's movement. *See Cincinnati v. Kelley*, 351 N.E.2d 85, 87 (Ohio 1976) ("the term 'actual physical control' must relate, in a reasonable manner, to the evil the ordinance is intended to

7

combat, viz., the prevention of the operation of vehicles by persons whose faculties are appreciably impaired from the consumption of alcohol or use of drugs of abuse."). In that regard, our first case addressing the meaning of "actual physical control," *State v. Ruona*, 133 Mont. 243, 248, 321 P.2d 615, 618 (1958), recognized that the phrase necessarily means control of a vehicle's *movements*. In *Ruona*, we defined "actual physical control" according to the dictionary definition of each of the words in the phrase, with the result that we held the meaning to be "existing or present bodily restraint, directing influence, domination or regulation, of an automobile."[3] In applying that definition to the facts of that case, we noted:

> [O]ne could have "actual physical control" while merely parking or standing still so long as one was keeping the car in restraint or *in position to regulate its movements*. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a thing, while bodily present, than prevention of movement or curbing movement. As long as one were physically or bodily able to assert dominion*, in the sense of movement,* then he has as much control over an object as he would if he were actually driving the vehicle.

*Ruona*, 133 Mont. at 248–49, 321 P.2d at 618 (emphasis added).

¶22    Thus, if a person cannot put a vehicle into motion, that person is not in actual physical control of that vehicle. Nearly every court to consider the question has arrived at the same conclusion. *See Adams*, 127 P.3d at 211 (collecting cases). To hold otherwise would mean that a person in a vehicle up on blocks, with no wheels, could be found guilty of DUI. This

---

[3] The District Court used this definition in the first sentence of its instruction defining "actual physical control." Although Sommers does not object to that portion of the instruction on appeal, we reiterate that under our case law it is reversible error to instruct a jury using this definition. *See State v. Christiansen*, 2010 MT 197, ¶ 10, 357 Mont. 379, 239 P.3d 949. In *Christiansen*, we held that the *Ruona* definition affected the defendant's rights because it was confusing to the jury and did not clearly state the law. We reversed and remanded for a new trial.

would be an absurd result, and statutory construction should not lead to absurd results if a reasonable interpretation would avoid it. *See State v. McGowan*, 2006 MT 163, ¶ 15, 332 Mont. 490, 139 P.3d 841; § 1-3-233, MCA ("Interpretation must be reasonable.").

¶23 In this case, the second sentence of the District Court's jury instruction on actual physical control stated: "It does not matter that the vehicle is incapable of moving." This is a direct quote from *State v. Taylor*, 203 Mont. 284, 287, 661 P.2d 33, 34 (1983). Both the State and the District Court apparently interpreted *Taylor* and a similar case, *State v. Gebhardt*, 238 Mont. 90, 775 P.2d 1261 (1989), to mean that there are no circumstances in which the vehicle's inability to move is relevant to the question of whether the defendant had actual physical control. However, both *Taylor* and *Gebhardt* involved a unique circumstance not present in this case. Although the vehicles in both cases were disabled when the defendant was apprehended, the evidence in both cases also indicated the vehicle became disabled as a direct result of the defendant driving or being in actual physical control of the vehicle while under the influence.

¶24 In *Taylor*, the defendant was found passed out in his vehicle with the engine running, the transmission in drive, the wheels turning, and tire tracks leading from the road to the borrow pit where his vehicle was stuck. The defendant was intoxicated when he was apprehended, there were no alcohol containers in the vehicle with him, and there were no apparent sources of alcohol nearby. The defendant argued he could not have been in actual physical control of his vehicle because it was incapable of moving. We disagreed, holding that a motorist inside a vehicle that became stuck in a borrow pit "has not relinquished regulation of or control over the vehicle." *Taylor*, 203 Mont. at 289, 661 P.2d at 35.

9

¶25 It is axiomatic that in order to *relinquish* control over something, you must first have control. In *Taylor*, the tire tracks leading off the road to the borrow pit supported a reasonable conclusion that the defendant had control of the vehicle immediately prior to it becoming stuck. Therefore, while reiterating our reasoning from *Ruona* that "actual physical control" means "being in a position to regulate the vehicle's movements" or "having authority to manage the vehicle," we further recognized that the defendant did not *relinquish* control over the vehicle by regulating its movements into a borrow pit and managing to get it stuck. The absence of any alcohol containers in the vicinity then gave rise to the reasonable inference that he was intoxicated before he got stuck. In that context, our statement, "It does not matter that the vehicle is incapable of moving," meant only that the vehicle's immovability at the time the defendant was apprehended did not preclude a finding of actual physical control when the immovability resulted from the defendant's driving.

¶26 *Gebhardt* had facts similar to those in *Taylor*. In *Gebhardt*, Highway Patrol officers discovered a pickup about ten feet off the road, stuck in mud, with the engine running. The officers saw tire chains next to the rear wheels and a bumper jack behind the vehicle. Tire tracks indicated the pickup became stuck when the driver attempted to negotiate a U-turn. Gebhardt was asleep in the vehicle, lying across the front seat of the pickup with his feet and legs beneath the steering wheel and his head near the passenger door. When awakened, he was belligerent and uncooperative. The officers smelled an odor of alcohol in the cab of the pickup and on Gebhardt's breath. *Gebhardt*, 238 Mont. at 92–93, 775 P.2d at 1263. Like Taylor, Gebhardt argued he could not have been in actual physical control of the vehicle because it was stuck in the mud and could not move. Following *Taylor*'s reasoning, we held,

10

"A motorist does not relinquish control over a vehicle simply because it is incapable of moving." *Gebhardt*, 238 Mont. at 97, 775 P.2d at 126. As in *Taylor*, the word "relinquish" was appropriate because the evidence gave rise to a logical inference that the defendant was in actual physical control while under the influence prior to his vehicle becoming stuck. That his vehicle was stuck when he was apprehended did not divest him of the control he exercised in getting the vehicle stuck in the first place.

¶27 The rationale underlying *Taylor* and *Gebhardt* addresses a problem that periodically arises in actual physical control cases. When a defendant argues he could not have had actual physical control because his vehicle was inoperable or immovable, the focus is often wrongly placed on the condition of the vehicle when the defendant was apprehended. As other courts addressing this problem have aptly noted:

> The focus should not be narrowly upon the . . . condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability [or other disability], it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control. To hold otherwise could conceivably allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution.

*State v. Smelter*, 674 P.2d 690, 693 (Wash. App. 1984); *accord State v. Larriva*, 870 P.2d 1160, 1161–1162 (Ariz. Ct. App. 1993); *State v. Starfield*, 481 N.W.2d 834, 838 (Minn. 1992) ("when it appears that the defendant drove the car to where it came to rest, this is also evidence that the defendant, when found in the parked car, was in physical control of the car while it was parked"). Thus, the appropriate reading of *Taylor* and *Gebhardt* is that the condition of the car when the defendant is apprehended is not dispositive. Where the

11

evidence permits, the jury may draw the logical inference that the defendant was previously in actual physical control while under the influence of alcohol.

¶28  We disapprove of the stand-alone use of the statement from *Taylor*, "It does not matter that the vehicle is incapable of movement," and the statement from *Gebhardt*, "A motorist does not relinquish control over a vehicle simply because it is incapable of moving," as jury instructions. Those statements were appropriate to the Court's rationale under the facts in those cases. Taken out of context, however, they could lead to the absurd result that a person in a vehicle up on blocks, with no wheels, could be found guilty of DUI. We do not believe the legislature intended such a result. A contextual reading of *Taylor* and *Gebhardt* would indicate that when determining the element of actual physical control of a vehicle, the fact finder should consider the totality of the circumstances rather than focusing only upon the circumstances of the vehicle and the defendant at the time they are discovered. Where circumstantial evidence indicates that the vehicle arrived at the location it was discovered as a result of the defendant driving or physically controlling the vehicle while under the influence, the jury may infer the defendant exercised actual physical control.

¶29  Because a vehicle's ability to move is relevant to determining whether the defendant had actual physical control of it, we hold that the second sentence of the jury instruction at issue here, "It does not matter that the vehicle is incapable of movement," does not fully and fairly instruct the jury on the applicable law. We further hold that the instruction prejudicially affected the defendant's substantial rights by preventing the jury from considering a valid defense. The misstatement of the law in the jury instruction here gives rise to the similar concern we had with a misstatement of the law in a jury instruction in *State*

12

*v. Robison*, 281 Mont. 64, 931 P.2d 706 (1997). In *Robison*, the district court's instructions stated, "One may be in actual physical control of a motor vehicle if he is physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol." We held that the instruction misstated the law because it impermissibly broadened the judicial definition of "actual physical control" to include every intoxicated occupant of a vehicle, even those who were merely passengers. We held that such a definition ran contrary to the purpose of the statute, which, "[o]bviously, . . . is directed at the driver of the vehicle, not at other persons who, while intoxicated, might legitimately happen to be passengers in the vehicle." *Robison*, 281 Mont. at 68–69, 931 P.2d at 709. Thus, we held that the district court's instruction defining actual physical control prevented the jury from considering Robison's defense that he was only a passenger in the vehicle.

¶30    The instruction at issue in this case similarly broadened the definition of "actual physical control" to include circumstances outside the conduct prohibited by the statute. If Sommers' truck was, in truth, incapable of movement, then the jury should have been permitted to consider whether the vehicle's inability to move prevented Sommers from being in actual physical control.

¶31    To be clear, we are not adopting a bright-line rule that the inoperability or immovability of a vehicle automatically forecloses the possibility of a DUI conviction based on actual physical control. As other courts addressing the issue have noted, in some circumstances, the disability of the vehicle will not defeat a person's actual physical control because the conditions making the vehicle immovable or inoperable can be quickly and

13

easily remedied. *See e.g. State v. Woodward*, 408 N.W.2d 927 (Minn. Ct. App. 1987) (actual physical control found where vehicle had a flat tire that could be quickly and easily replaced). This is consistent with the widely accepted premise that "physical control is meant to include situations where an intoxicated individual is found in a parked car under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the driver, to others, or to property." *State v. Starfield,* 481 N.W.2d 834, 837 (Minn. 1992).

¶32     On the other hand, when the condition causing the disability is not easily remedied, it may prevent a person from exercising actual physical control. *See e.g. State v. Mailman*, 242 P.3d 269, 273 (N.M. 2010) (finding insufficient evidence to show defendant had actual physical control where arresting officer was unable to start defendant's vehicle); *State v. Carter*, 889 S.W.2d 231, 233 (Tenn. Crim. App. 1994) (finding insufficient evidence to support defendant's conviction for driving under the influence because an experienced mechanic testified the car needed both a new carburetor and a jump-start to run).

¶33     In determining how to treat a disabled vehicle in the context of "actual physical control," we note that a majority of courts use a totality-of-the-circumstances test. *See* 92 A.L.R. 6th 295, § 19 (2014) (collecting cases). This approach recognizes that determining whether an individual had actual physical control of a vehicle is a fact-intensive inquiry which may require consideration of a wide variety of circumstances. This approach allows the fact finder to consider all relevant factors in determining whether the defendant had actual physical control.

¶34    We believe the majority approach best encompasses the conduct meant to be proscribed by our DUI statutes.  As our previous case law demonstrates, whether an individual is in actual physical control of a vehicle does not always lend itself to a bright-line, one-size-fits-all determination.  A totality-of-the-circumstances test allows the jury to consider difficult-to-foresee situations which may nonetheless support a determination that the defendant was in actual physical control of the vehicle.  *See e.g. Turner v. State*, 244 Mont. 151, 795 P.2d 982 (1990) (affirming jury's determination that defendant had actual physical control where defendant was pushing his motorcycle down the street).  We therefore adopt the majority approach.

¶35    Jurisdictions which have adopted a totality-of-the-circumstances test have likewise adopted various factors for the jury to consider when determining whether a defendant had actual physical control.  Among the factors appropriate for the jury to consider in determining whether a defendant had actual physical control of a vehicle are:

> (1) where in the vehicle the defendant was located;
> (2) whether the ignition key was in the vehicle, and where the key was located;
> (3) whether the engine was running;
> (4) where the vehicle was parked and how it got there;
> (5) whether the vehicle was disabled (broken down, mechanically inoperable, stuck, or otherwise immovable); and
> (6) how easily the defendant could have cured the vehicle's disability.

This list is not meant to be all-inclusive; the parties may present evidence of, and the jury may consider, relevant factors not on this list.  No single factor will necessarily determine whether a person is in actual physical control of a vehicle, and it is up to the jury to decide what weight to give to each factor.  These factors should accompany an appropriate definition of "actual physical control," such as:  An individual is "in actual physical control"

of a vehicle when the individual is not a passenger, and is in a position to cause the vehicle to move, or control the vehicle's movement in some manner or direction. Actual physical control of a vehicle includes, but is not limited to, driving, pushing, coasting, or parking a vehicle. *See e.g. State v. Peterson*, 236 Mont. 247, 249, 769 P.2d 1221, 1222 (1989); *Turner*, 244 Mont. 151, 795 P.2d 982. An individual need not be conscious to be in actual physical control. *See Ruona*, 133 Mont. at 250, 321 P.2d at 619 (defendant was in actual physical control despite being asleep or passed out); *accord Taylor*, 203 Mont. at 287, 661 P.2d at 34.

¶36 Where appropriate, the jury should also be instructed that the focus need not be only upon the circumstances of the vehicle and the defendant when they were discovered. Where circumstantial evidence indicates that the vehicle arrived at the location it was discovered as a result of the defendant driving or physically controlling the movement of the vehicle while intoxicated, the jury may properly infer the defendant exercised actual physical control in getting the vehicle to that place.

¶37 When instructing the jury, trial courts are not bound by the suggested instruction language in this opinion. The trial court remains free to craft instructions appropriate to the specific facts of the case in front of it using language that fully and fairly instructs the jury on the applicable law.[4]

¶38 *2. Did the District Court wrongly deny Sommers' motion for acquittal?*

---

[4] As we did in *Robison*, we encourage the Criminal Jury Instructions Committee to reconsider the pattern instruction defining "actual physical control" in light of this opinion.

¶39 Sommers argues that the District Court's mistaken interpretation of "actual physical control" also caused the court to wrongly deny his motion for a judgment of acquittal. Where a motion for acquittal is denied by a district court applying an incorrect legal standard, we reverse and remand for reconsideration of the motion for acquittal in light of the correct legal standard. *See State v. Lambert*, 280 Mont. 231, 237, 929 P.2d 846, 850 (1996) (holding the district court applied an incorrect element to the offense; case remanded for reconsideration of defendant's motion for acquittal under the correct legal standard). Where the incorrect legal standard also served as the basis for a jury instruction, the district court must grant a new trial if the reconsidered motion for acquittal is denied. *See Lambert*, 280 Mont. at 237, 929 P.2d at 850 ("If the court finds that the State's evidence was sufficient to withstand the motion for acquittal, then the court must grant a new trial because of the erroneous jury instruction."). Here, the District's Court's denial of Sommers' motion for acquittal was premised on an incorrect legal standard, as was the jury instruction.

## CONCLUSION

¶40 The District Court relied on an incorrect legal standard when it instructed the jury on the meaning of "actual physical control," and relied on the same incorrect standard when it denied the defendant's motion for acquittal. We reverse and remand with instructions to reconsider the motion for acquittal in light of this opinion, and to grant a new trial with appropriate jury instructions if the motion is denied.

/S/ JAMES JEREMIAH SHEA

We Concur:

17

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE