FILED

12/08/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0637

DA 18-0637

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 306N

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

MARK MENDOZA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and For the County of Gallatin, Cause No. DC-17-483A
                   Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Michael P. Dougherty,
          Assistant Attorney General, Helena, Montana

          Martin D. Lambert, Gallatin County Attorney, Bozeman, Montana

                         Submitted on Briefs: October 28, 2020

                                 Decided: December 8, 2020

Filed:

                            _____
                                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, Mark Mendoza, appeals his conviction and sentence entered in the Eighteenth Judicial District Court, Gallatin County. Mendoza was convicted of Driving Under the Influence of Alcohol (DUI), fourth or subsequent offense, a felony, in violation of § 61-8-401, MCA. We affirm.

¶3 At roughly 1:51 A.M., on the morning of December 3, 2017, Bozeman Police Officer Lindsay Shepherd was dispatched to a report of a drunken driver near Interstate 90 and North 7th Avenue. The reporting party, William Linn, told dispatch that he was following a red truck driving all over the road on Interstate 90. Linn testified at trial that he observed the vehicle "swerving from one side of the interstate to the next," travelling "from 45 to 65 miles an hour," and "was almost in the right ditch going to the left ditch . . . ." While on the phone with dispatch, Linn provided the license plate number of the vehicle and followed the red truck as it exited the interstate. Linn continued following the vehicle while it pulled into and parked at a gas station and motel parking lot. Linn "stayed a safe distance behind" the truck as he followed it into the parking lot and "parked right behind" the truck. He sat and watched the vehicle until law enforcement arrived. Linn confirmed he was able to observe the truck the entire time, from when he first saw it on the interstate,

2

until it parked and law enforcement arrived. Linn testified that there was only one individual in the truck and he was seated in the driver's seat. Linn told dispatch that he witnessed the driver get out of the truck and urinate in the parking lot. He described the driver to dispatch as being male, having a mustache, and wearing a black coat and a "Hurley" brand hat. Linn did not see any other individuals in the truck as it was driving and did not see any other persons, other than the driver, exit the truck once it had stopped.

¶4 Officer Shepherd arrived at the parking lot and spoke with Linn. She verified the information that Linn had relayed to dispatch and then made contact with Mendoza, who was sitting in the driver's seat of the red truck. Officer Shepherd testified at trial that Mendoza was the sole occupant of the vehicle. When she approached the vehicle, it was not in motion, the vehicle was not turned on, and the key to the vehicle was not in the ignition. Officer Shepherd testified that on the morning in question, the temperature outside was approximately 34 degrees. She stated that she put her hand near the wheel well on the vehicle and found that the engine compartment felt warm. Mendoza denied driving the truck and denied having the key to the vehicle.

¶5 Officer Shepherd observed that Mendoza had a "dazed expression on his face and was very slow to move around." While speaking with Mendoza, she observed that Mendoza's speech seemed slow, and his eyes were red, bloodshot, and watery. Based on Mendoza's appearance and behavior, she asked Mendoza to step out of the vehicle and perform a series of field sobriety tests. Officer Shepherd observed that he was wearing pants, a t-shirt, a black coat, flat-soled shoes, and a baseball hat with a "Hurley" brand insignia on it. The black coat and Hurley hat were consistent with the description dispatch

3

gave Officer Shepherd. Mendoza displayed several indicators of impairment while performing the field sobriety tests and was asked to take a preliminary breath test. The breath test indicated the presence of alcohol and a blood test would later show that Mendoza's blood alcohol content measured .162. Mendoza was placed under arrest and Officer Shepherd performed a pat down search of Mendoza but did not find a key. Throughout his encounter with Officer Shepherd, Mendoza denied he was driving and did so on multiple occasions. He was charged with a felony DUI, fourth or subsequent offense, in violation of § 61-8-401, MCA, after a records check showed that he had three previous DUIs. Mendoza was also charged with Driving While Suspended or Revoked, in violation of § 61-5-212, MCA.

¶6      At trial, Mendoza repeatedly denied that he was driving and denied he had a key to the vehicle. He testified that on the morning at issue, he had been at a "gentleman's club" in Three Forks with a coworker. Mendoza stated he had gone out to the truck to lay down and rest in the back seat, and that at some point, his coworker came out and drove them back to Bozeman while Mendoza was napping in the back. Mendoza claimed he did not wake up until he heard the truck's door open. At that point, Mendoza testified, his coworker got out and "hopped in with a friend of his in the parking lot" while he opened a rear "suicide door" and got out of the backseat to urinate. Mendoza testified that he then got back in the vehicle and sat in the driver's seat while his friend left in another car. At trial, Mendoza agreed he was intoxicated on the night in question, that the interstate is a way of the state open to the public, and that his license to drive was suspended at the time

4

of his arrest. He maintained, however, that he did not drive and did not have the key to the truck because his coworker took it with him when he left.

¶7 Following the presentation of evidence and the witnesses' testimony, the parties reviewed the proposed jury instructions. The District Court noted that the proposed instructions were all "standard" Montana Pattern Criminal Jury Instructions. Jury Instruction No. 6 provided a definition of "actual physical control" for the offense of driving while under the influence of alcohol. This instruction was modeled almost word-for-word after Montana Pattern Criminal Jury Instruction No. 10-106. This instruction provided:

> A person is in actual physical control of a motor vehicle if the person is not a passenger, and is in a position to, and has the ability to, operate the vehicle in question. A motorist does not relinquish control over a vehicle simpl[y] because it is incapable of starting or moving.

Defense Counsel did not object to any of the State's proposed instructions at trial.

¶8 The jury acquitted Mendoza of driving with a revoked or suspended license but convicted him of DUI. The District Court imposed a sentence of 24 months to the Department of Corrections, followed by a five-year placement at the Montana State Prison, suspended and consecutive to the 24-month sentence. On appeal, Mendoza challenges the District Court's jury instructions, the efficacy of his trial counsel, and the sufficiency of the evidence against him.

¶9 The first issue on appeal is whether Jury Instruction No. 6 fully and fairly instructed the jury on the correct law. Mendoza argues it did not, and the instruction misstated the law and deprived him of a valid defense. This Court "review[s] jury instructions in a

5

criminal case to determine whether the instruction fully and fairly instructed the jury on the law applicable to the case. Trial courts have broad discretion when instructing juries and therefore reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights." *State v. Gray*, 2004 MT 347, ¶ 12, 324 Mont. 334, 102 P.3d 1255. As a general rule, a party may only raise issues on direct appeal that have been properly preserved before the district court. *State v. Dethman*, 2010 MT 268, ¶ 31, 358 Mont. 384, 245 P.3d 30. Consequently, we generally do not address issues raised for the first time on appeal. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854.

¶10 Section 46-16-410(3), MCA, provides, "[a] party may not assign as error any portion of the instruction or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection at the settlement of instructions." Here, the District Court provided Mendoza, who was represented by counsel, an opportunity to object to Jury Instruction No. 6 and he failed to do so. Because Mendoza did not object to the instruction and acquiesced to the instruction as it was given, he cannot now claim that it was error for the court to give it. *Dethman*, ¶ 32 (citing *Gray*, ¶ 20 ("[A]cquiescence in error takes away the right of objecting to it.")). Mendoza cannot now claim the District Court erred in giving the instruction to which he agreed. We thus decline to review this issue and dismiss this claim because it was not properly preserved for review.

¶11 Nonetheless, Mendoza argues a district court is not relieved of its own duty to correctly instruct the jury absent an objection by counsel or the presence of a correct instruction. Mendoza maintains that a district court has an independent obligation to

6

correctly instruct the jury, especially when the issue is one of law rather than fact. At the Court's discretion, we "may review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain error doctrine" where "failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *George*, ¶ 4; *State v.* Taylor, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79. Where, as here, jury instructions are not objected to at trial, we must first decide whether exercising plain error review is appropriate. *State v. Gallagher*, 2005 MT 336, ¶ 18, 330 Mont. 65, 125 P.3d 1141. "When reviewing unpreserved claims of error, we employ the plain error doctrine sparingly, on a case-by-case-basis, considering the totality of circumstances of each case." *George*, ¶ 5 (citation and internal quotations omitted). Under plain error review, the party asserting error "bears the burden of firmly convincing this Court that the claimed error implicates a fundamental right and that such review is necessary." *State v. Daniels*, 2019 MT 214, ¶ 31, 397 Mont. 204, 448 P.3d 511 (citation omitted).

¶12     In support of his argument that he was deprived of a valid defense, Mendoza cites *State v. Sommers*, 2014 MT 315, 377 Mont. 203, 339 P.3d 65. In *Sommers*, the jury instruction given for "actual physical control" was not a pattern jury instruction. The second sentence of the instruction stated: "It does not matter that the vehicle is incapable of moving." *Sommers*, ¶ 12. This Court found the instruction deprived the defendant of pursuing a defense that, because his vehicle was physically incapable of moving (the vehicle was mechanically disabled), the defendant was incapable of being in

7

"actual physical control" over the vehicle. *Sommers*, ¶¶ 18, 30. The instruction in *Sommers* was not a pattern jury instruction. We held that the instruction impermissibly "broadened the definition of 'actual physical control' to include circumstances outside the conduct prohibited by the statute." *Sommers*, ¶ 30.

¶13 The instruction given in *Sommers* differs from the instruction at issue. Importantly, the instruction in *Sommers* was not a pattern jury instruction, whereas Jury Instruction No. 6 was tailored almost word-for-word after a Montana pattern jury instruction. Jury Instruction No. 6 did not contain the language "it does not matter that the vehicle is incapable of moving." Further, we conclude that Jury Instruction No. 6 did not impermissibly broaden the definition of "actual physical control" to include a situation outside the conduct prohibited by the statute. It instructed the jury on a situation that the legislature categorically intended to prohibit—specifically, the situation where an individual is found intoxicated behind the wheel of a vehicle that, although momentarily incapacitated, could quickly be started and be a danger to the public. *Sommers*, ¶ 31. Moreover, Jury Instruction No. 6 provided a much more restrictive definition of "actual physical control" than the instruction in *Sommers*. Jury Instruction No. 6 clarifies that a person can only have "actual physical control of a motor vehicle if the person *is not a passenger*, and is in a position to, or has the ability to, operate the vehicle in question." (Emphasis added.) Thus, per Jury Instruction No. 6, passengers are precluded from being considered as being in "actual physical control" of the vehicle. This language further limits who can be considered a "motorist" under the definition of "actual physical control." Therefore, if the jury found that Mendoza was truly a passenger in the vehicle, and never

8

had access to the key so as to be in a position to or have the ability to operate the truck, then the instruction permitted the jury to return a verdict of not guilty to the charge of DUI. Although the comments to Montana Pattern Jury Instruction No. 10-106 state that the last sentence of the instruction should be given in situations where a vehicle has become stuck or is being manually directed, that does not mean it was plain error for the District Court to incorporate the sentence into Jury Instruction No. 6.

¶14 Moreover, Jury Instruction No. 6 did not preclude the jury from considering Mendoza's defense at trial. Mendoza argued at trial, and now on appeal, that because the key was not in the ignition and Officer Shepherd did not find the key on Mendoza's person, he was precluded from having "actual physical control" over the vehicle. Mendoza's defense was premised on the jury believing that he never had the key, and thus, had no control over the truck, because his coworker drove the vehicle and then took the key when he left the parking lot. Jury Instruction No. 6 did not foreclose this defense. If the jury believed that Mendoza never had control over the vehicle to begin with, Jury Instruction No. 6 permitted the jury to find him not guilty of DUI. Mendoza has not met his burden in showing that Jury Instruction No. 6 was plain error and we conclude that, under the totality of the circumstances, plain error review is not appropriate in this case.

¶15 The second issue raised on appeal is whether Mendoza's trial counsel was ineffective. Mendoza argues his counsel was ineffective because there was no plausible justification for failing to object and offer a jury instruction defining "actual physical control" that supported Mark's trial defense.

9

¶16 Before reaching the merits of an ineffective assistance of counsel claim on direct appeal, we first must decide whether the allegations of the claim are properly before the Court or whether the allegations should be pursued in a petition for postconviction relief. *State v. Fields*, 2002 MT 84, ¶ 31, 309 Mont. 300, 46 P.3d 612. "When a claim of ineffective assistance of counsel is based on facts of record, it may be raised on direct appeal. When, however, the allegations cannot be documented from the record, those claims must be raised in a petition for postconviction relief." *Fields*, ¶ 31 (citation omitted). Here, Mendoza does not argue that his claim of ineffective assistance is based on facts in the record. Accordingly, because the record fails to detail why Mendoza's defense counsel made certain tactical decisions regarding Jury Instruction No. 6, Mendoza's ineffective assistance claim cannot be resolved on direct review and should be raised in a postconviction proceeding. We dismiss his claim without prejudice.

¶17 The third issue raised on appeal is whether the evidence presented at trial was sufficient to support Mendoza's DUI conviction. "We review de novo whether sufficient evidence supports a conviction. There is sufficient evidence to support a conviction if after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Daniels*, ¶ 27 (citation and internal quotation marks omitted). "To convict a person of driving under the influence, the State must prove that the defendant was: (1) driving or in actual physical control of a vehicle; (2) upon the ways of the state open to the public; and (3) while under the influence of alcohol." *State v. Hudson*, 2005 MT 142, ¶ 13, 327 Mont. 286, 114 P.3d 210 (citing § 61-8-401, MCA). "A person has 'actual physical control' of a

vehicle when he or she has existing or present bodily restraint, directing influence, domination, or regulation of a vehicle." *Hudson*, ¶ 13 (citation and internal quotation marks omitted).

¶18 Here, reviewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to determine that Mendoza was driving under the influence of alcohol. Mendoza concedes that the prosecution presented sufficient evidence that he was under the influence of alcohol in a vehicle upon a way of the state open to the public. Mendoza argues, however, that the evidence was insufficient to prove beyond a reasonable doubt he was driving or in "actual physical control" of the vehicle. We disagree and conclude there was sufficient evidence for the jury to find, as it did, that Mendoza was in "actual physical control" of the vehicle.

¶19 Although the prosecution did not present direct evidence that the key was in the vehicle, there was plenty of circumstantial evidence to support a finding that Mendoza had been driving or was in "actual physical control" of the vehicle. Importantly, there is no dispute that the vehicle was capable of moving. Even Mendoza testified that the vehicle had just been operating and driving down the road minutes before Officer Shepherd found him in the driver's seat. Officer Shepherd testified that the engine was still warm, and Linn's testimony supports the finding that the vehicle had just been driven five or ten minutes before Officer Shepherd arrived. Furthermore, Linn testified that he only saw one person in the vehicle and that person never left the scene. Linn also testified that he was able to observe the vehicle the entire time and the driver was never out of his sight. Although Mendoza testified that his friend had taken the key with him, the jury was free to

11

disregard this testimony and conclude otherwise. *Hudson*, ¶ 17 (citing *State v. Lewis*, 169 Mont. 290, 294, 546 P.2d 518, 520 (1976) (holding it remains the function of the jury to determine the credibility of the witnesses and the weight to be given to their testimony)). Because there was credible, circumstantial evidence that Mendoza was capable of accessing the truck's key and starting the vehicle, there was sufficient evidence for the jury to determine that he had "actual physical control" over the vehicle.

¶20     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶21     Affirmed.


                                        /S/ LAURIE McKINNON


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR