FILED

02/20/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0504

DA 16-0504

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 27

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

DARA STARR IVERSON,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 16-020D
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate
Defender; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General; Helena, Montana

            Edward J. Corrigan, Flathead County Attorney, Alison E. Howard, Deputy
County Attorney; Kalispell, Montana

Submitted on Briefs:  January 31, 2018

Decided:  February 20, 2018

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Dara Starr Iverson (Iverson) appeals a jury verdict in the Eleventh Judicial District Court, Flathead County, convicting her of operating a noncommercial vehicle with alcohol concentration of 0.08 or more (DUI *per se*), a felony.  We affirm in part and reverse in part.

¶2      We restate the issues on appeal as follows:

> *1.  Whether Iverson's right to due process was violated by a jury instruction that instructed the jurors, when choosing between two competing interpretations of circumstantial evidence—one that supports guilt and one that supports innocence—to choose whichever interpretation was the "most reasonable?"*
>
> *2.  Did the District Court err in imposing cost of legal counsel on Iverson?*
>
> *3.  Did the District Court err in incorporating additional costs in the written judgment that were stricken in the oral pronouncement?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On January 12, 2016, Iverson was charged with felony driving under the influence, in violation of § 61-8-401, MCA.  On March 18, 2016, the Information was amended to add an alternative offense of felony DUI *per se* in violation of § 61-8-406, MCA.  Following a jury trial, Iverson was acquitted of felony DUI and convicted of felony DUI *per se*.  Over Iverson's objection, the District Court instructed the jury, "When circumstantial evidence is susceptible to two interpretations, one that supports guilt and the other that supports innocence, the jury determines which is most reasonable" and denied Iverson's proposed circumstantial evidence instruction.

¶4      On January 9, 2016, Iverson was stopped for speeding.  Upon interaction with Iverson, Officer Wardensky noted her speech to be slightly slurred and he observed her

2

eyes to be red and glassy. He also noted she smelled of alcohol. Iverson admitted to drinking alcohol and smoking medical marijuana. Iverson admitted going to the Silver Bullet Bar for dinner and consuming a couple alcoholic drinks. After leaving that bar, Iverson also admitted to stopping at the Eagles for an additional alcoholic drink. She was on her way home from the Eagles when she was stopped. Officer Wardensky arrested Iverson for the offense of DUI. At the detention center, Iverson exhibited indications of impairment on standard field sobriety tests including raising her arms and losing her balance on the walk-and-turn test. Iverson refused to provide a breath sample. As such, Officer Wardensky obtained a search warrant for a blood draw. Approximately two hours after being stopped, Iverson's blood alcohol content (BAC) registered 0.107 plus or minus 0.008 grams of ethanol per 100 milliliters of whole blood.

¶5     Montana State Crime Lab forensic toxicologist Douglas Lancon testified regarding his testing of Iverson's blood sample explaining his finding of 0.107 reflected Iverson's BAC at the time of the blood draw. He explained initial effects of alcohol include impairment of judgment and euphoria and later effects include slurred speech and disruption of fine and gross motor skills which impair the ability to successfully complete field sobriety tests such as the walk-and-turn and one-leg stand. He explained an individual can begin to exhibit the effects of alcohol within 20 minutes or less of consumption. Further, depending on how much a person has already consumed, consumption of new alcohol can affect a person within minutes. Lancon described the uncertainty in attempting to calculate a person's BAC at a time prior to her blood draw, noting a variety of impacting

3

factors such as the person's weight, whether she had eaten, when she consumed alcohol, what alcohol she consumed and how long had she consumed alcohol. Lancon testified the absorption rate of alcohol varies considerably between 20 minutes and an hour and a half after consumption and that the body processes alcohol over three phases, the "absorption" phase, the "peak" phase, and the "elimination" phase.

¶6 Iverson contends there were two reasonable interpretations of the BAC evidence presented at trial: 1) Iverson's body was eliminating alcohol at the time she was driving such that her BAC was above 0.08 at the time she was driving or, 2) Iverson's body was absorbing alcohol at the time she was driving such that her BAC was below 0.08 at the time she was driving.

¶7 Iverson asserts the District Court erred in giving the circumstantial evidence instruction because it violated her due process right "by authorizing jurors to find guilt even where they believed the circumstantial evidence also supported a reasonable–plausible–interpretation supportive of innocence." Iverson further asserts the given circumstantial evidence instruction altered the standard of proof the jury must use when evaluating circumstantial evidence.

¶8 The State contends the District Court did not err in giving the pattern "most reasonable" instruction. The State asserts the instructions "as a whole fully and fairly instructed the jury regarding the State's burden of proof and the presumption of innocence, and there is no reasonable likelihood that the jury understood the instruction to allow it to convict Iverson of DUI *per se* on anything less than proof beyond a reasonable doubt."

4

¶9    Iverson also contends there is a discrepancy between the Court's oral pronouncement and its written judgment in that Condition 13(a)(i) requires payment of an additional $800 in public defender fees which were stricken orally at sentencing. Iverson alternatively contends the District Court erred by imposing any costs for counsel after its own determination at sentencing that Iverson did not have the current financial ability to pay a fine or other fees contained in paragraph 13 of the Presentence-Investigation (PSI) report and would not have the financial ability to do so within a reasonable time. The State concurs noting, "the evidence in the record indicates she does not have the present or future ability to pay these costs." The State requests "remand with instructions to strike the portion of Condition 13 of the Judgment ordering Iverson to pay the costs of defense counsel."

**STANDARD OF REVIEW**

¶10    "We review for an abuse of discretion whether the district court correctly instructed the jury." *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904. "[W]hile a district court has broad discretion to formulate jury instructions, that discretion is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *Peterson*, ¶ 22 (quoting *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263) (internal quotations omitted). "We review the instructions as a whole to determine whether they fully and fairly instruct the jury on the applicable law." *State v Sanchez*, 2017 MT 192, ¶ 7, 388 Mont. 262, 399 P.3d 886 (citing *State v. Kaarma*, 2017 MT 24, ¶ 7, 386 Mont. 243, 390, P.3d 609). "[T]he

5

party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Tarlton*, ¶ 19 (quoting *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, 162 P.3d 106).

¶11    Jury instructions that relieve the State of its burden to prove every element of the charged offense beyond a reasonable doubt violate the defendant's due process rights. *State v. Miller*, 2008 MT 106, ¶ 11, 342 Mont. 355, 181 P.3d 625 (citing *Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 2420 (1989) (per curiam)).  The issue of whether a defendant's due process rights were violated is a question of law; we review the district court's conclusion to determine whether its interpretation of the law was correct. *Miller*, ¶ 11.

## DISCUSSION

¶12    *1. Whether Iverson's right to due process was violated by a jury instruction that instructed the jurors, when choosing between two competing interpretations of circumstantial evidence–one that supports guilt and one that supports innocence–to choose whichever interpretation was the "most reasonable?"*

¶13    Iverson properly preserved her objection to this instruction. Iverson asserts the instruction relieved the State of its burden to prove her guilt beyond a reasonable doubt. Iverson argues her right to due process was violated by the instruction as it allowed the jury to convict her based on evidence that was reasonable, rather than requiring proof beyond a reasonable doubt.  The State contends the jury instructions, as a whole, fully and fairly instructed the jury on all relevant points of law and the instruction at issue, when read

6

in totality with the other instructions, did not shift the State's burden to prove her guilty beyond a reasonable doubt. The State also contends the case against Iverson was not based primarily on circumstantial evidence, but was based on direct evidence as testified to by Officer Wardensky—he observed Iverson speeding in her vehicle, he observed Iverson in the driver's seat with no one else in the vehicle, he observed Iverson smelled of alcohol, he observed Iverson's eyes to be red and glassy, he watched Iverson demonstrate clues of impairment when performing field sobriety tests, Iverson admitted to him she had consumed alcohol at two different bars before being stopped, and as the evening progressed, he observed Iverson's speech became clearer and her comprehension level increased.

¶14    We first consider whether the instructions on a whole fully and fairly instructed the jury. *Sanchez*, ¶ 7. The District Court provided jurors with twenty-four instructions. The District Court instructed the fact that charges were brought against Iverson could not be taken "as any indication, evidence or proof that the Defendant is guilty of any offense." The Court clearly instructed on the burden of proof:

> The State of Montana has the burden of proving the guilt of the Defendant beyond a reasonable doubt. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would rely and act upon it in the most important of his or her own affairs. Beyond a reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt. The Defendant is presumed to be innocent of the charge against [her]. This presumption remains with [her] throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty.

7

¶15 The District Court instructed as to Count One that a "person commits the offense of driving under the influence of alcohol and/or drugs if, while under the influence of alcohol and/or drugs, he or she drives or is in actual physical control of a vehicle upon the ways of this state open to the public." The District Court specifically instructed, "[i]f you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty. If, on the other hand, you find from your consideration of the evidence that any of these elements have not been proved beyond a reasonable doubt then you should find the Defendant not guilty."

¶16 The District Court instructed Count Two was charged in the alternative to Count One such that Iverson could not be convicted of both offenses. Again, the District Court instructed the jury as to the specific elements of the offense of operating a noncommercial vehicle with an alcohol concentration of 0.08 or more and again reiterated that if the elements were not proved beyond a reasonable doubt, the jury should find Iverson not guilty.

¶17 The District Court further instructed:

> A positive blood alcohol test result does not, in itself, prove that the person was under the influence of alcohol at the time the person was driving a vehicle upon the ways of the state open to the public. A person may not be convicted based upon a positive blood alcohol test alone. The State must produce other competent evidence that the person was under the influence of alcohol while driving a vehicle upon the ways of this state open to the public. You must weigh the evidence presented and decide whether the State has proven beyond a reasonable doubt that the Defendant was under the influence of alcohol while driving a vehicle upon the ways of this state open to the public.

8

¶18 The District Court instructed jurors they were the sole judges of the credibility of witnesses and to determine what weight should be given to the testimony of each witness upon careful consideration of all the testimony given and the circumstances under which each witness testified.

¶19 The record is clear the District Court fully and fairly instructed the jury on the offense of driving under the influence and, in the alternative, operation of a noncommercial vehicle by a person with an alcohol concentration of 0.08 or more. Each of the individual offense instructions required the jury to convict only if the State proved each element of the offense beyond a reasonable doubt. As in *Sanchez*, we conclude the disputed instruction did not relieve the State from its burden to prove guilt beyond a reasonable doubt:

> Rather, it only provided the jury with some guidance for resolving competing interpretations of circumstantial evidence. If the jury found that an interpretation of circumstantial evidence was reasonable, it could be considered in conjunction with any other evidence to determine whether the State met its burden to prove guilt of each offense beyond a reasonable doubt. It is the overall weight of the evidence, and not any particular inference from the evidence, that determines the jury's ultimate decision on guilt. The existence of alternative interpretations of circumstantial evidence does not mean that both interpretations are equally persuasive or weighty. . . . This Court has plainly held that a district court may properly give the circumstantial evidence instruction which is at issue in this case requiring the jury to accept the interpretation of circumstantial evidence they believe is the most reasonable.

*Sanchez*, ¶¶ 16, 17.

¶20 The jury was able to consider the circumstantial evidence in conjunction with the direct evidence to determine whether the State proved guilt beyond a reasonable doubt.

9

Iverson has failed to show the disputed instruction adversely affected her due process rights. The District Court fully, fairly and properly instructed the jury that the State must prove guilt beyond a reasonable doubt. In reviewing the instructions in their entirety, it is clear the disputed instruction did not violate Iverson's due process rights.

¶21   *2. Did the District Court err in imposing costs of legal counsel on Iverson?*

¶22   Section 46-8-113(1), MCA, requires the Court to determine whether Iverson should pay the cost of assigned counsel. Pursuant to § 46-8-113(4), MCA, the Court may not sentence Iverson to pay costs of counsel unless she is or will be financially able to pay those costs.

¶23   Iverson is disabled and lives on a limited, fixed income. She receives $733 per month in Social Security income and $270 per month in food stamp benefits. At the time of sentencing, she resided in Section 8 housing and owned no assets other than items of personal property. In sentencing Iverson, the District Court considered her limited financial means. The District Court imposed the statutory $5,000 fine and suspended it in its entirety, stating "I do make the determination that you are not presently able to pay those fine[s] -- a fine nor will you be in a reasonable amount of time. You're on a limited income, it's a fixed income based on Social Security income." The District Court further found Iverson was not financially able to pay fees, costs, and surcharges set forth in paragraph 13 of the PSI report. Given her limited fixed income and disability status, the State concedes Iverson is not and will not be financially able to pay costs of assigned counsel.

¶24 The District Court suspended Iverson's fine and found Iverson financially unable to now or in the future pay any fine or the fees, costs, and surcharges set forth in paragraph 13 of the PSI report. The District Court has already determined Iverson's ability to pay and the record is clear she is financially unable now or in the future to pay the costs of assigned counsel. As such, this cause is remanded to the District Court to strike the portion of Condition 13 of the Judgment ordering Iverson to pay any costs of assigned counsel. Because this issue is dispositive, we need not address Issue 3.

## CONCLUSION

¶25 The jury instructions, as a whole, fully and fairly instructed on all relevant points of law and the instruction at issue, when read in totality with the other instructions, did not shift the State's burden to prove Iverson's guilt beyond a reasonable doubt. Further, the record is clear Iverson does not have the financial ability now or in the future to pay the costs of assigned counsel.

¶26 We affirm in part and reverse in part.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

11