FILED

05/24/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0607

DA 20-0607

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 100N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

ROBERT LARRY WOOD,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DC 19-3887
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        William Boggs, Attorney at Law, Missoula, Montana

     For Appellee:

        Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

        Jed C. Fitch, Beaverhead County Attorney, Russell Michaels, Deputy
County Attorney, Dillon, Montana

Submitted on Briefs:  April 6, 2022
Decided:  May 24, 2022

Filed:

           _____
                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert Larry Wood appeals his 2020 conviction of Criminal Possession of Dangerous Drugs and Criminal Possession of Drug Paraphernalia, which also gave rise to the revocation of his suspended sentence from a previous drug conviction. Wood raises the following issues on appeal:

1. *Whether the prosecutor's comments regarding constructive possession deprived Wood of a fair trial as a matter of plain error.*

2. *Whether the District Court committed reversible plain error in instructing the jury on the act and mental state elements of the offenses.*

3. *Whether there was sufficient evidence to sustain the conviction.*

4. *Whether the District Court should have credited Wood for nearly three years served on probation with no violations prior to his new offense.*

We affirm the conviction and remand for the trial court to determine credit for time served on probation.

¶3 In 2017, Wood received a five-year suspended sentence for the offense of Criminal Possession of Dangerous Drugs, § 45-9-102(1), MCA (2015). In May 2019, Wood informed his probation officer (P.O.), Joel Stewart, that he used methamphetamine, a dangerous drug, in violation of his conditions of supervision, which prompted a search of

2

Wood's vehicle. *See* §§ 45-9-102(1), 50-32-224(3)(d), MCA. In the back hatch of Wood's Nissan Pathfinder, P.O. Stewart saw two cans of Twisted Tea, which Wood said he picked up two days earlier while cleaning a fishing access site, and a backpack. The backpack contained smaller bags and pouches, including a Mary Kay leather cosmetics case, which, in P.O. Stewart's experience, is a type of receptacle often used to store drugs. Inside the case, P.O. Stewart discovered paraphernalia commonly used to smoke and intravenously inject methamphetamine and a baggie with "a little bit of crystalline powder."

¶4      A Sheriff's deputy responded to the scene and tested the powder and the paraphernalia using a Narcotics Identification Kit (NIK) field test. The results of the test indicated that the substance in the bag and on the paraphernalia was methamphetamine, although the County did not send the items to the State Crime Lab for testing. The State charged Wood with one felony count of Criminal Possession of Dangerous Drugs, in violation of § 45-9-102(1), MCA, and one misdemeanor count of Criminal Possession of Drug Paraphernalia, in violation of § 45-10-103, MCA.

¶5      Wood was tried by a jury in January 2020. During voir dire, the prosecutor asked several questions pertaining to the concept of constructive possession:

> [State]: So, how many of you think that, if something is in your car, it's in your possession? Would anyone disagree with that? That an item in your car is in your possession?
>
> Prospective Jury Panel: (No response.)
>
> [State]: Everyone agrees that you have control over the things that are in your vehicle?

3

When one prospective juror expressed some doubt about this concept, the prosecutor elaborated:

> [State]: So . . . constructive possession means that, if you are, for instance, in your car, you have control over everything that's in your vehicle. Would you be able to accept . . . that idea[?]
>
> Juror No. 24: Is that knowingly or not knowingly?
>
> [State]: And so, mental state is a different element of a crime that has to be proven.
>
> Juror No. 24: I understand that.
>
> .    .    .
>
> [State]: So, what I'm talking about, with constructive possession, is the idea of whoever—however an item got into the vehicle, the mere fact that it's there and no one else is in the vehicle, the law would attribute possession—
>
> Juror No. 24: I understand that.
>
> [State]: —to that person. Can you accept that?
>
> Juror No. 24: I can accept it. But there's still some gray area.

Because Juror No. 24 continued to challenge the notion of constructive possession, the prosecutor attempted to strike the juror for cause, but the court denied the request after defense counsel voir dired the juror. When another juror expressed skepticism about this concept, the State explained the difference between the act and the mental state:

> [State]: But knowledge is a separate issue. . . . So, for every crime there are, one of the elements is mental state. Does someone have a conscious object to do something? Or do they know of a high probability that those things are there. That's a little bit separate from possession. And so, what I'm talking about is just that one element of possession. . . . But so, under the law, . . . if you had that in your vehicle, you could be in possession of it under constructive possession. But it would depend on whether you knew it was there or not or knew of a high probability it would be there. Does that make sense?

4

The prosecutor eventually explained that possession and ownership are two different concepts, which seemed to assuage any remaining concerns the jurors had. In closing argument, the prosecutor returned to the theme of constructive possession, stating, "Under the law, the fact that the Defendant had meth and paraphernalia in his vehicle means that he was in possession." Defense counsel raised no objection to the prosecutor's remarks during voir dire or in closing.

¶6    P.O. Stewart testified that when he searched Wood's vehicle, he found syringes, a glass pipe, cotton balls, a bent spoon, a butane torch, and a rubber band, items characteristic of methamphetamine use, in the Mary Kay case that was in Wood's vehicle. He stated that, in his experience, it would be "uncommon for someone to have" methamphetamine and this kind of paraphernalia in his truck and not know about it. P.O. Stewart also testified that, although the baggie was not sent to the State Crime Lab, he is trained in identifying methamphetamine based on the unique appearance of the drug, and he believed the baggie contained methamphetamine. He also opined that Wood would have known the backpack was in the vehicle when he stashed the two cans of Twisted Tea in the back hatch two days prior to the search.

¶7    Deputy Ken Peterson, who performed the NIK field test, explained the NIK process for the jury. He testified that an NIK test is used in the field to establish a presumption regarding the nature of the tested substance. When agitated inside the test kit, methamphetamine will change from its usual clear color to bright blue. Deputy Peterson testified that when he tested the substance inside the baggie that came from Wood's

5

vehicle, its color changed to bright blue. Deputy Peterson also testified that the cotton balls inside the Mary Kay case tested positive for methamphetamine. The test results corroborated Deputy Peterson's observation-based belief that the substance inside the baggie and on the paraphernalia was methamphetamine, a belief he formed based on his training and experience. Deputy Peterson explained that the decision to not send the items to the State Crime Lab was not unusual because there was a high degree of confidence that the substance was methamphetamine and that it belonged to Wood, the only occupant of the vehicle in which the drug was discovered.

¶8 The jury found Wood guilty on both counts, and the District Court granted the State's petition to revoke Wood's 2017 suspended sentence. The District Court sentenced Wood to the Montana Department of Corrections for a period of five years for his 2017 conviction. The court also imposed a suspended five-year sentence for Wood's new conviction of Criminal Possession of Dangerous Drugs to run consecutively with his 2017 sentence and six months in Beaverhead County Jail for Criminal Possession of Drug Paraphernalia, to run concurrently. The District Court credited Wood for nine days served without addressing Wood's on-the-record request that he receive "street time" credit for nearly three years of probation without any violations of his conditions.

¶9 *1. Whether the prosecutor's comments regarding constructive possession deprived Wood of a fair trial as a matter of plain error.*

¶10 Wood argues that the State committed prosecutorial misconduct because the prosecutor's statements regarding constructive possession during voir dire and closing

6

argument were intended to mislead the jury into believing that crimes of possession lack a mental state element.

¶11     We generally do not address issues of prosecutorial misconduct not objected to at trial. *State v. Ritesman*, 2018 MT 55, ¶ 12, 390 Mont. 399, 414 P.3d 261.  We may, however, exercise our discretion and review such issues under the plain-error doctrine. *Ritesman*, ¶ 12.  We invoke plain-error review on an unpreserved issue if "the claimed error implicates a fundamental right" and "failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *State v. Williams*, 2015 MT 247, ¶ 16, 380 Mont. 445, 358 P.3d 127.  We invoke the plain-error doctrine sparingly and on a case-by-case basis. *State v. Lawrence*, 2016 MT 346, ¶ 6, 386 Mont. 86, 385 P.3d 968.

¶12     "In reviewing a preserved claim of prosecutorial misconduct, we consider whether the prosecutor's comments were improper and whether they prejudiced the defendant's right to a fair trial." *Ritesman*, ¶ 21 (citation and quotation omitted).  We do not presume prejudice from prosecutorial misconduct; rather, we must review "the challenged comments in the context of the trial and the closing argument as a whole." *State v. Christensen*, 2020 MT 237, ¶ 79, 401 Mont. 247, 472 P.3d 622 (citation omitted).  "When the argument is made for the first time on appeal, 'we first determine whether the defendant's constitutional rights have been implicated.'" *Ritesman*, ¶ 21 (quoting *Lawrence*, ¶ 9).  "Even then, we will not invoke the plain-error doctrine to reverse a conviction" unless the error resulted in a manifest miscarriage of justice, left unsettled the

fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process. *Ritesman*, ¶ 21.

¶13 Wood satisfies the first prong of the plain-error review analysis because his claim that the prosecutor misstated the elements of the offenses implicates the fundamental right to a fair trial. *See State v. Iverson*, 2018 MT 27, ¶ 11, 390 Mont. 260, 411 P.3d 1284; *State v. Geren*, 2012 MT 307, ¶ 28, 367 Mont. 437, 291 P.3d 1144. The State contends that the prosecutor's statements did not result in a manifest miscarriage of justice, render the trial fundamentally unfair, or compromise the integrity of the judicial process because the prosecutor clearly explained to the venire that mental state was a separate element of the offenses and that his comments were relevant only to the act element of possession.

¶14 "[A] person commits the offense of criminal possession of dangerous drugs if the person possesses any dangerous drug[.]" Section 45-9-102(2), MCA. Methamphetamine is a dangerous drug. Section 50-32-224(3)(d), MCA. "Possession" is "the knowing control of anything for a sufficient time to be able to terminate control." Section 45-2-101(59), MCA. "A material element of every offense is a voluntary act[.]" Section 45-2-202, MCA. The "act" element of criminal possession is the voluntary possession of the drug for a sufficient time. *See In re R.L.H.*, 2005 MT 177, ¶ 24, 327 Mont. 520, 116 P.3d 791; *State v. Gorder*, 248 Mont. 336, 338, 811 P.2d 1291, 1292-93 (1991). "Possession can be either actual or constructive." *In re R.L.H.*, ¶ 18. Constructive possession may be imputed when the defendant exercises "dominion and control" over the drug. *In re R.L.H.*, ¶ 18. Constructive possession may be inferred from "circumstantial evidence of past possession." *In re R.L.H.*, ¶¶ 25-26. A separate element of criminal possession is

"knowledge." *In re R.L.H.*, ¶ 24. A person possesses a drug "knowingly" if he is "aware of a high probability that such substance is a dangerous drug." *In re R.L.H.*, ¶ 24; *see also* § 45-2-101(35), MCA.

¶15 Viewed in isolation, some of the prosecutor's comments during voir dire were confusing or incomplete. But they did not render the trial "fundamentally unfair" when considered "in the context of the trial . . . as a whole." *See Christensen*, ¶ 79. Prospective jurors expressed confusion when the prosecutor said that "the law would attribute possession" in every instance in which a drug is discovered in one's vehicle, regardless of how it got there. But the transcript shows clearly that the prosecutor clarified the distinction between the actus reus—possession—and the mens rea—knowledge—of the offense of criminal possession and explained that the State was required to prove both. When he realized that Juror No. 24 was conflating the two elements, the prosecutor quickly explained that "mental state is a different element of a crime that has to be proven." He later reiterated that possession is "just one element" and that the commission of the crime would "depend on whether [the defendant] knew [the drug] was there or knew of a high probability it would be there." These statements are consistent with the law of criminal possession. It is not surprising that a person without legal training would be perplexed by the concept of constructive possession, and the prosecutor quickly remedied any confusion his initial comments may have created.

¶16 Nor did the prosecutor's closing argument "compromise the integrity of the judicial process" when viewed in its full context. The prosecutor stated:

9

You also heard evidence establishing beyond a reasonable doubt that the Defendant was in possession of the methamphetamine and the paraphernalia. Under the law, the fact that the Defendant had meth and paraphernalia in his vehicle means that he was in possession. Even if the paraphernalia and the meth had belonged to someone else, they were still in his exclusive dominion and control in his vehicle as the only occupant.

. . .

Even though they were not in his pocket, he still possessed them because they were in his vehicle, and he was the only person in that vehicle.

The State's argument reflected the testimony of its two witnesses, who opined that Wood likely knew the methamphetamine and paraphernalia were in his vehicle because of the nature of the paraphernalia and Wood's admissions to P.O. Stewart. This is consistent with the rule that constructive possession may be inferred by circumstantial evidence of past possession or drug use. The prosecutor already had explained to the venire the concept of constructive possession and clarified the difference between the mental state and the act of the offense. Though the prosecutor could have given a better explanation, he plainly told the venire that both possession and knowledge of the methamphetamine were needed in order to convict. Wood fails to "firmly convince" us that the prosecutor's statements "resulted in a manifest miscarriage of justice, left unsettled the fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process." *See State v. Strizich*, 2021 MT 306, ¶ 44, 406 Mont. 391, 499 P.3d 575.

¶17    *2. Whether the District Court committed reversible plain error in instructing the jury on the act and mental state elements of the offenses.*

¶18    Wood argues that the District Court committed reversible plain error because the jury instructions omitted the requirement of a "voluntary" act from the definition of possession and offered an incorrect "knowingly" definition.

10

¶19 "We review jury instructions in criminal cases to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law." *Williams*, ¶ 10 (quotation marks and citation omitted). District courts have broad discretion when instructing a jury, and we will not reverse unless the court gave erroneous instructions that "prejudicially affect the defendant's substantial rights." *Williams*, ¶ 10 (citation omitted). Because Wood did not preserve this issue for appeal, we review this claim as well for plain error. Wood's alleged error implicates a fundamental right because "jury instructions that relieve the State of its burden to prove every element of the charged offense beyond a reasonable doubt violate the defendant's due process rights." *Iverson*, ¶ 11. The State contends, however, that Wood cannot meet the second prong of plain-error review because the instructions, "as a whole[,] fully and fairly instruct[ed]" the jury on the elements of criminal possession. We agree.

¶20 With respect to the actus reus of the offense, the District Court fairly and accurately instructed the jury. Instruction No. 7 advised the jury that "[a] material element of every offense is a *voluntary act*" (emphasis added). Instruction No. 14 advised the jury of the elements of Criminal Possession of Dangerous Drugs: "A person commits the offense of criminal possession of dangerous drugs if the person purposely or knowingly possesses the dangerous drug methamphetamine." Instruction No. 16 instructed the jury on the elements of Criminal Possession of Drug Paraphernalia: "A person commits the offense of criminal possession of drug paraphernalia if the person purposely or knowingly uses or possesses with intent to use drug paraphernalia to process, prepare, ingest, inhale, or otherwise introduce into the human body the dangerous drug methamphetamine." Instruction No. 18

11

informed the jury that possession may be actual or constructive, and it defined "constructive possession" as "not in the actual physical possession, but that the [d]efendant has dominion or control over the drugs[.]" Wood has not demonstrated error by the court's separate instruction on "voluntary act" rather than including the phrase in the elements of the crime or in the definition of constructive possession.

¶21 Similarly, the District Court fairly and accurately instructed the jury on the mens rea elements of the offenses. Instruction No. 11 advised the jury that "[a] person acts knowingly with respect to a specific fact when the person is aware of a high probability of that fact's existence." Wood asserts that this was not the correct definition of "knowingly" because possession requires conduct and not merely knowledge of a fact. Under § 45-2-101(35), MCA,

> a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. . . . When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence.

Because the State's theory of possession in this case was that Wood constructively, not actively, possessed the drugs and paraphernalia, the essential question was whether Wood knew of a high probability that there was methamphetamine and paraphernalia in his vehicle. In the context of the record, the District Court did not err in its instruction requiring knowledge of a specific fact. *See In re R.L.H.*, ¶ 24. Wood fails to firmly convince us that the jury instructions, as a whole, did not fairly and accurately instruct the jury on the elements of the offenses, much less that the instructions rendered the trial proceedings fundamentally unfair.

¶22   *3. Whether there was sufficient evidence to sustain the conviction.*

¶23   Wood contends that the trial evidence was insufficient to sustain his conviction because the State did not test the methamphetamine in the State Crime Lab and because the State did not establish that he *knowingly* possessed the methamphetamine and paraphernalia found in his vehicle.

¶24   "We review de novo whether sufficient evidence supports a conviction." *State v. Sommers*, 2014 MT 315, ¶ 15, 377 Mont. 203, 339 P.3d 65. "We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Sommers*, ¶ 15 (citation omitted).

¶25   Both of the State's witnesses, P.O. Stewart and Deputy Peterson, testified that, based on their training and experience, the crystalline substance in Wood's vehicle was consistent with methamphetamine they had seen in the past. They both also testified that the other items found in Wood's vehicle were typical of intravenous and inhalational methamphetamine use. The jury also heard evidence regarding the NIK test. Deputy Peterson testified that he tested both the crystalline powder and the cotton balls using the NIK and that both revealed methamphetamine. Viewed in the light most favorable to the prosecution, a rational factfinder could have concluded from this evidence that the State proved beyond a reasonable doubt that Wood had methamphetamine in his vehicle.

¶26   There was sufficient evidence to support the "knowingly" element of the offenses as well. Knowledge may be inferred from "the acts of the accused and the facts and circumstances connected with the offense." *State v. Van Voast*, 247 Mont. 194, 199,

13

805 P.2d 1380, 1383 (1991) (citations omitted). The circumstances of the offense were that Wood admitted to P.O. Stewart, twice within a brief period, that he used methamphetamine; Wood said he stashed two cans of Twisted Tea in the back hatch of his vehicle in the last two days; P.O. Stewart found the bag containing the drugs and paraphernalia in the back hatch of Wood's vehicle; and Wood was the owner and the only occupant of the car at the time of the search. We have held that admission of past drug use is direct evidence of prior possession and may serve as circumstantial evidence of present possession. *In re R.L.H.*, ¶ 28. In *Van Voast,* we found the evidence sufficient to support a conclusion that the defendant knowingly possessed marijuana in his camper because there was a baggie in the defendant's living room, the camper was parked 130 feet from the defendant's home, and the defendant was the only person with a key to his camper. 247 Mont. at 199, 805 P.2d at 1383. Similarly, there was sufficient evidence here that Wood knowingly possessed the methamphetamine and paraphernalia in his vehicle. Viewed in the light most favorable to the prosecution, a rational finder of fact could conclude that the State proved all the elements of criminal possession beyond a reasonable doubt.

¶27 *4. Whether the District Court should have credited Wood for nearly three years served on probation with no violations prior to his new offense.*

¶28 Wood maintains that the District Court failed to credit him for time served on probation when it revoked his suspended sentence. The State counters that Wood failed to appeal from his 2016 case, Cause No. DC 2016-3700, and only appealed from his 2020 conviction.

14

¶29 The District Court held a combined revocation and sentencing hearing on October 27, 2020. The court issued one combined judgment for both cases, and the judgment referenced both cause numbers. Though Wood's notice of appeal references only cause No. DC 2019-3887, we conclude that the issue is properly before the Court.

¶30 We review revocations of suspended sentences for abuse of discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Because revocation decisions involve both legal and factual findings, we review a district court's findings of fact for clear error and its conclusions of law de novo. *Jardee*, ¶ 5.

¶31 "If a suspended or deferred sentence is revoked, the judge shall consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of violations as a credit against the sentence." Section 46-18-203(7)(b), MCA. If elapsed time is not credited, "the judge must state the reasons for the determination in the order." Section 46-18-203(7)(b), MCA. A district court must credit "street time" served under a sentence, "unless there is evidence in the record or in the recollection of the probation officer that the defendant committed a violation of his sentence during the relevant period." *Jardee*, ¶ 13.

¶32 At the hearing, Wood requested credit for "almost three years" of street time served on probation. The District Court did not credit Wood for "street time" and did not make a record stating the reason for the denial of credit. Neither the pre-sentence investigation report nor the District Court's findings of fact indicate that Wood violated the conditions of his suspended sentence prior to the commission of his new offense. It appears that the court simply did not address Wood's request at the sentencing hearing. We remand to the

15

District Court for the limited purpose of determining the amount of "street time" credit to which Wood is entitled for his time served on probation.

¶33    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  We affirm Wood's conviction and remand the Judgment for the District Court to determine the amount of credit to which Wood is entitled for time served on probation.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE