FILED

12/13/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0242

DA 21-0242

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 241

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DYLAN MIKKEL OHL,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DC 20-294
                Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Chad Wright, Appellate Defender, Carolyn M. Gibadlo, Assistant
            Appellate Defender, Helena, Montana

       For Appellee:

            Austin Knudsen, Montana Attorney General, Christine Hutchison,
            Assistant Attorney General, Helena, Montana

            Kirsten Pabst, Missoula County Attorney, Matt Jennings, Deputy
            County Attorney, Missoula, Montana

                    Submitted on Briefs:  October 12, 2022

                                Decided:  December 13, 2022

Filed:

                         _____
                                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1　　Dylan Mikkel Ohl (Ohl) appeals his conviction and judgment of guilty for the offense of escape.

¶2　　We affirm.

¶3　　We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred in denying Ohl's motion to dismiss for insufficient evidence.*

*Issue Two: Whether the District Court erred in declining to instruct the jury on criminal contempt as a lesser-included offense to escape.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4　　In May 2019, the State petitioned to revoke Ohl's suspended sentence on a prior conviction. Ohl admitted the violations and the District Court held a dispositional hearing on June 17, 2020. Due to the COVID-19 pandemic, the court allowed Ohl to appear remotely. The District Court imposed a new sentence of two years with the Department of Corrections (DOC), and ordered him to report to his probation officer in two days. At the State's request, the court clarified that "technically, I don't have any control over you anymore because you're now in the custody of the Department of Corrections," stating that Ohl was "at this point now, committed to the Department of Corrections." The probation officer averred that "[i]f you could just have him show up into the office by 5:30, I can meet him there." Ohl objected to the new deadline, and asked for an additional two days, to which the court responded "if I had the ability to do that, I would. But, unfortunately, I

2

don't.  So I'm gonna ask you to meet [the probation officer]."  Ohl did not report to his probation officer, and was arrested several months later.

¶5    The State charged Ohl with felony escape on June 18, 2020.  Prior to trial, Ohl filed an unopposed motion to include a jury instruction for criminal contempt as a lesser-included offense.  After the close of the State's evidence at trial, Ohl moved to dismiss for insufficient evidence, arguing that his actions did not meet the statutory definition of escape.[1]  The District Court ultimately denied both of Ohl's motions.  The jury returned a guilty verdict and the court sentenced Ohl to six years at the Montana State Prison, all suspended.  Ohl appeals.

## STANDARD OF REVIEW

¶6    We review denial of a motion to dismiss for insufficient evidence de novo for correctness.  *State v. McWilliams*, 2008 MT 59, ¶ 37, 341 Mont. 517, 178 P.3d 121; *State v. Swann*, 2007 MT 126, ¶ 17, 337 Mont. 326, 160 P.3d 511.  We review a trial court's refusal to give an instruction on a lesser-included offense for an abuse of discretion.  *State v. Denny*, 2021 MT 104, ¶ 13, 404 Mont. 116, 485 P.3d 1227.  However, whether an offense is lesser included is a question of law, which we review de novo.  *State v. Molenda*, 2010 MT 215, ¶ 3, 358 Mont. 1, 243 P.3d 387.

---

[1] At trial, Ohl referred to his motion as one for a directed verdict.  We have held that a motion for a directed verdict is properly deemed to be a motion to dismiss for insufficient evidence pursuant to § 46-16-403, MCA.  *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, 178 P.3d 121.

**DISCUSSION**

¶7     *Issue One: Whether the District Court erred in denying Ohl's motion to dismiss for insufficient evidence.*

¶8     Ohl argues that the District Court erroneously denied his motion to dismiss for insufficient evidence by misinterpreting the relevant charging statute for the crime of escape. To succeed on a motion to dismiss for insufficient evidence, a defendant must show that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not find the essential elements of the crime beyond a reasonable doubt. *State v. Cybulski*, 2009 MT 70, ¶ 42, 349 Mont. 429, 204 P.3d 7; § 46-16-403, MCA. Ohl was charged with escape under § 45-7-306, MCA. Section 45-7-306(2), MCA, provides in relevant part that a "person subject to official detention commits the offense of escape if the person knowingly or purposely eludes official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited time." "Official detention" is defined to include "placement of a person in the legal custody of a municipality, a county, or the state as a result of . . . a conviction for an offense or of having been charged with an offense." Section 45-7-306(1)(a), MCA. Neither "legal custody" nor "elude[]" are defined under Title 45, MCA.

¶9     Ohl maintains that, despite his failure to report to his probation officer, he remained in the "legal custody" of the State, as his "legal status" as a DOC commit did not change. Ohl points to a Youth Court Act provision under Title 41, MCA, defining "legal custody,"

4

for purposes of that Act, as a type of "legal status."[2] *See* § 41-5-103(30)(a), MCA (defining "legal custody" as a "legal status created by order of a court" giving a person certain specified rights and duties). Ohl contends that he did not (and, in fact, could not) elude "placement . . . in the legal custody" of the DOC because he never changed his legal status from that of a DOC commit following the District Court's pronouncement of revocation of his suspended sentence.

¶10    Ohl's preferred interpretation of the escape statute would essentially make § 45-7-306(2), MCA, meaningless and without effect, rendering it virtually impossible to commit escape by fleeing detention.  Under Ohl's view that escape requires effecting a change in legal status, prison inmates who scaled the prison walls would not have committed an escape—their legal status as a ward of the state would remain unchanged. We will not adopt such an absurd and unreasonable result where reasonable interpretation will avoid it.  *See* § 1-3-233, MCA.

¶11    Here, a "contrary intention plainly appears" to application of the Youth Court Act definition of "legal custody" to the escape statute.  *See* § 1-2-107, MCA.  We interpret words and phrases "according to the context" and, operating under the presumption that the Legislature does not pass meaningless legislation, "avoid any statutory interpretation that renders any sections of the statute superfluous and does not give effect to all of the words used."  *Belk v. Mont. Dep't of Envtl. Quality*, 2022 MT 38, ¶ 23, 408 Mont. 1, 504

---

[2] Ohl points out that "[w]henever the meaning of a word or phrase is defined in any part of th[e] code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."  Section 1-2-107, MCA.

P.3d 1090 (citing *State v. Berger*, 259 Mont. 364, 367, 856 P.2d 552, 554 (1993)); *State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448; § 1-2-101, MCA (preferring a construction that "if possible . . . will give effect to all" statutory provisions); § 1-2-106, MCA. Statutory interpretation "must be reasonable," § 1-3-233, MCA, and "should not lead to absurd results if a reasonable interpretation would avoid it." *State v. Harrison*, 2016 MT 271, ¶ 10, 385 Mont. 227, 230, 383 P.3d 202 (citing *State v. Sommers*, 2014 MT 315, ¶ 22, 377 Mont. 203, 339 P.3d 65).

¶12    The escape statute's legislative history is illuminative. *See Stockman Bank of Mont. v. Mon-Kota, Inc.*, 2008 MT 74, ¶ 17, 342 Mont. 115, 180 P.3d 1125 ("When the legislative intent cannot be readily derived from the plain language, or when it is helpful to determine the correct interpretation of the statute, we . . . look to legislative history."). Prior to 1997, the escape statute provided that a "person subject to official detention commits the offense of escape if he knowingly or purposely removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited time." Section 45-7-306(2), MCA (1995). "Official detention" was defined as:

> imprisonment which resulted from a conviction for an offense, confinement for an offense, confinement of a person charged with an offense, detention by a peace officer pursuant to arrest, detention for extradition or deportation, placement in a community corrections facility or program, supervision while under a supervised release program, participation in a county jail work program under 7-32-2225 through 7-32-2227, or any lawful detention for the purpose of the protection of the welfare of the person detained or for the protection of society.

Section 45-7-306(1), MCA (1995).

¶13     During the 1997 Legislative session, House Bill 43 (HB 43), amending the escape statute, was introduced at the request of the DOC.  *See* H.B. 43, 55th Leg. 219 (Mont. 1997).  The DOC presented testimony before the House Judiciary Committee arguing that two recent Supreme Court rulings had necessitated amending the escape statute. *See* Hearing on H.B. 43 Before the H. Jud. Comm., 55th Leg. Reg. Sess. Ex. 2 (Mont. 1997).  In *State v. Nelson*, 275 Mont. 86, 910 P.2d 247 (1996), Montana State Prison inmates were performing work on the Deer Lodge golf course under minimal, non-direct supervision by a civilian golf-course employee when they became drunk and took a golf-course-owned vehicle to Helena to purchase more alcohol, where they were apprehended.  The Supreme Court overturned the resulting felony convictions, holding that the Deer Lodge golf course was not on the list of places constituting "official detention" under § 45-7-306, MCA (1993), from which an inmate could commit felony escape. *Nelson*, 275 Mont. at 95-96, 910 P.2d at 253.  In *State v. Roberts*, 275 Mont. 365, 369, 912 P.2d 812, 815 (1996), the Court held that a prisoner's failure to return from furlough did not constitute an escape because the furloughed defendant similarly was not in any of the enumerated locations from which a defendant could commit felony escape.  The DOC advocated for amendment of the definition of "official detention" to replace the laundry list of locations with the "placement . . . in legal custody" language to avoid prison officials needing to "study the statute before they dare take an inmate anywhere outside the prison walls to determine if the place where they are taking the inmate is included in the escape statute" and relieve the Legislature of the task of trying to "imagine every possible scenario

7

of escape and include every conceivable place in the statute." Hearing on H.B. 43, 55th Leg. Reg. Sess. at Ex. 2.

¶14 During a committee hearing on the issue, HB 43's sponsor stated that the bill revised the definition of "official detention" so that "[i]f they are in custody for a felony, then it would be felony escape." Hearing on H.B. 43 Before the S. Jud. Comm., 55th Leg. Reg. Sess. 6 (Mont. 1997). Likewise, the Department of Justice supported the amendment, opining that:

> The 1997 proposed amendments are intended to clarify finally that any person who has been charged with or convicted of a felony who is under lawful custody of the state, county, or city (other than a probationer or parolee) is guilty of felony escape if he escapes from or fails to return to that custody following temporary leave granted for a specific purpose. The bill eliminates the laundry list of facilities from which an escape constitutes a felony and focuses instead on the fact of custody.

Hearing on H.B. 43, 55th Leg. Reg. Sess. at Ex. 3.

¶15 The amendment's use of the term "legal custody" was clearly intended to merely remove the necessity that an escape be launched from a particular location, now criminalizing escapes regardless of whether they are commenced from a prison cell, a golf course, or Pork Chop John's. Far from making commission of the crime of escape a legal impossibility, the legislative history demonstrates that the intent of the amended definition of "official detention" as placement in "legal custody" was to close loopholes related to the myriad of circumstances in which those with a legal status in the criminal justice system, but not presently enclosed by physical walls, might seek to avoid abiding by the remaining lawfully-imposed restraints on their freedom through physical evasion. The District Court

did not err in declining to grant Ohl's motion to dismiss for insufficient evidence on the basis of Ohl's proposed interpretation of § 45-7-306, MCA.

¶16 As part of his argument that the District Court erred when it denied Ohl's motion to dismiss for insufficient evidence, Ohl also states that the District Court "erroneously defined elude" in jury instructions. After hearing argument regarding statutory interpretation of "official detention" as used in § 45-7-306, MCA, the District Court, over Ohl's objection, included a jury instruction defining "[e]luding" as "a person removing themselves from physical custody or taking actions to avoid being placed in physical custody." On appeal, Ohl states that this instruction "changed the object of elude" from legal to physical custody, contrary to the elements of the escape statute. Ohl does not squarely make an independent assertion of error or statement of an issue appealed here regarding jury instructions. Regardless, in light of Ohl's argument before the trial court that the term "legal custody" in § 45-7-306, MCA, could be read to essentially render commission of the crime of escape a legal impossibility, and our contrary holding as set forth above, we find that the given instructions as a whole fully and fairly instructed the jury of the applicable law. *See State v. Iverson*, 2018 MT 27, ¶ 14, 390 Mont. 260, 411 P.3d 1284.

¶17 *Issue Two: Whether the District Court erred in declining to instruct the jury on criminal contempt as a lesser-included offense to escape.*

¶18 Ohl argues that the District Court erred in refusing to instruct the jury on criminal contempt as a lesser-included offense of escape. Jury instructions must, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Erickson*, 2014 MT

9

304 ¶ 21, 377 Mont. 84, 338 P.3d 598. A defendant is entitled to a lesser-included offense instruction if the offense, as a matter of law, constitutes an included offense of the charged offense and there is sufficient evidence to support the lesser-included offense instruction. *Denny*, ¶ 27; *State v. Beavers*, 1999 MT 260, ¶ 23, 296 Mont. 340, 987 P.2d 371. This rule helps avoid "the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal." *State v. Castle*, 285 Mont. 363, 367, 948 P.2d 688, 690 (1997).

¶19 In determining whether an offense constitutes an included offense for purposes of jury instructions, we follow the statutory definition of an "[i]ncluded offense" as an offense that:

> (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (b) consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or

> (c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

Section 46-1-202(9), MCA. *See Beavers*, ¶ 25. Ohl does not assert that criminal contempt constitutes an attempted escape under subsection (b), therefore we address only subsections (a) and (c) here.

¶20 Under subsection (a), Ohl must show that the offense of criminal contempt is established by proof of the same or less than all the facts required to establish the commission of the charged offense of escape. "[F]acts," under § 46-1-202(9)(a), MCA,

10

refer to the statutory elements of the charged offense, not the specific facts of the case at hand. *Molenda*, ¶ 7; *Beavers*, ¶ 30. In essence, if it is possible to commit Crime A without also committing Crime B, then Crime A is not an included offense of Crime B. *See, e.g., Molenda*, ¶ 11 (noting that while the defendant in that particular case may have, as a factual matter, committed an assault in addition to criminal endangerment, assault was not, as a legal matter, an included offense of criminal endangerment because, by way of "illustration," a "person operating a motor vehicle while under the influence of alcohol with a passenger asleep in the vehicle has committed the offense of criminal endangerment despite not having committed any of the four definitions of assault").

¶21 Here, the elements of escape, incorporating the statutory definition of "official detention," are that a defendant:

(1) knowingly or purposely

(2) eludes

(3)

    (a) placement in government legal custody

    (b) to which the defendant is subject

    (c) as a result of being charged or convicted of an offense.

*See* § 45-7-306(2), MCA, (providing that a "person subject to official detention commits the offense of escape if the person knowingly or purposely eludes official detention"); § 45-7-306(1)(a), MCA (defining "[o]fficial detention" as "placement of a person in the legal custody of a municipality, a county, or the state as a result of . . . a conviction for an offense or of having been charged with an offense"). In contrast, the elements of the

11

criminal contempt statutory provision under which Ohl sought an instruction are that a defendant:

(1) knowingly engages in,

(2) purposely disobeying or refusing,

(3) any lawful process or other court mandate.

*See* § 45-7-309(1), MCA ("A person commits the offense of criminal contempt when the person knowingly engages in any of the following conduct: . . . (c) purposely disobeying or refusing any lawful process or other mandate of a court[.]").

¶22    While the mental state requirements of the two statutes are indistinguishable, the range of proscribed acts and accompanying concomitant status capable of constituting an escape are far narrower than for a criminal contempt. It is possible to engage in any number of acts disobeying or refusing a court mandate or lawful process under § 45-7-309, MCA, that do not involve eluding placement in government legal custody to which one is subject as a result of being charged or convicted of an offense (thereby constituting an escape). For example, an attorney's failure to appear at a court hearing could be a knowing/purposeful refusal or disobedience of a court mandate constituting a criminal contempt, but would not be a knowing/purposeful elusion of official detention, constituting an escape. *See, e.g.*, *Cross Guns v. Eighth Judicial Dist. Court*, 2017 MT 144, ¶ 19, 387 Mont. 525, 396 P.3d 133 (upholding criminal contempt sanction where attorney's failure to appear at a hearing constituted disobedience of a lawful order of the court). A conviction for criminal contempt cannot be established by proof of the same or fewer facts than those

required for a conviction of escape, and criminal contempt is not an included offense of escape under § 46-1-202(9)(a), MCA.

¶23 Turning to subpart (c) of the statutory definition of an included offense, we ask whether criminal contempt differs from the offense of escape "only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." Section 46-1-202(9)(c), MCA.

> Properly interpreted, subsection (c) provides that if the only difference between the two offenses is one of degree (be it risk, injury, culpability, or any combination thereof) then it can be a lesser included offense. If there are other differences between the two offenses (other than differences of degree) then it cannot qualify as a lesser included offense.

*Molenda*, ¶ 16.

¶24 For example, while the mental state of willful and wanton disregard may constitute a lesser degree of culpability than the mental state of knowingly, additional "qualitative" differences between criminal endangerment and reckless driving exist, as demonstrated by the additional statutory requirement of driving a vehicle. *See Molenda*, ¶ 18 (citing *Beavers*, ¶¶ 17, 29).

¶25 Here, Ohl argues that a court mandate is "less than" placement in legal custody and that to elude is more egregious than to disobey. Assuming for the sake of argument that disobeying or refusing a court mandate is less risky, injurious, or culpable[3] than eluding official detention, that is not the only difference between the two offenses. Additional qualitative differences exist, as demonstrated by the additional requirement for escape that

---

[3] As noted above, the required mental state for criminal contempt and escape are essentially indistinguishable.

13

one "elude" "official detention," as described above. Thus, criminal contempt is not an included offense of escape under § 46-1-202(9)(c), MCA.

¶26     Ohl points to *State v. Williams*, 2010 MT 58, ¶¶ 15-30, 355 Mont. 354, 228 P.3d 1127, where we held that the State could not charge the same actions as both sexual assault and sexual intercourse without consent, because, relying on the § 46-1-202(9), MCA, definitions of "included offense," we determined that "one offense [was] included in the other" under Montana's double jeopardy statute, § 46-11-410(2)(a), MCA. Analyzing the § 46-1-202(9)(a), MCA, definition of "included offense," we determined that the facts of one offense constituted a subset completely encompassed by the facts of the other. *See Williams*, ¶¶ 25-27. *Compare* § 45-5-502, MCA (defining sexual assault as subjecting another person to "sexual contact without consent") *and* § 45-2-101(67), MCA (defining "sexual contact") *with* § 45-5-503(1), MCA (defining sexual intercourse without consent) *and* § 45-2-101(68), MCA (defining "sexual intercourse"). We noted that the level of egregiousness of the required conduct of sexual assault could be construed as "less egregious" than the required conduct of sexual intercourse without consent. *Williams*, ¶ 26. Here, as noted, the elements of criminal contempt are not equivalent to or a subset of the elements of escape. While an individual cannot commit the crime of sexual intercourse without consent without also taking actions constituting a sexual assault, one can commit criminal contempt in a myriad of ways without also undertaking an escape. Moreover, as discussed above, unlike sexual assault's relationship to sexual intercourse without consent, criminal contempt does not differ from escape only in the respect that it "involves less egregious conduct." *See Williams*, ¶ 26; § 46-1-202(9)(c), MCA.

14

¶27 Because criminal contempt is not an included offense of escape under § 46-1-202(9), MCA, Ohl was not entitled to a lesser-included offense jury instruction and we need not reach the question of whether there was evidence in the record that could support a conviction under criminal contempt. The District Court did not err in declining to provide the requested jury instruction.

## CONCLUSION

¶28 Ohl has failed to demonstrate on appeal that the District Court erred in denying his motion to dismiss for insufficient evidence on the basis of his interpretation of the essential elements of the crime of escape under § 45-7-306, MCA. Neither did the District Court err in declining to provide the requested jury instruction for criminal contempt as a lesser-included offense.

¶29 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

15